## JOSEPH G. IRWIN'S APPEAL FROM PROBATE.

The statute of 1848 in relation to wills is general in its terms, and not only directory but prohibitory and exhaustive.

Under that statute, and prior to 1856, a will made by a domiciled inhabitant of another state, executed according to the laws of such state, but not according to the provisions of our statutes, could not become operative in respect to real estate situate in this state.

Such a will could become operative to transfer the title to personal estate in this state, because personal property is transferable by any mode recognized by the law of the domicil, subject to be divested, where transferred by testacy and intestacy, by administration in favor of a creditor citizen.

If the maker of such a will removed into this state and became domiciled here, and died prior to 1856, his will remained invalid as to such real estate, and did not become operative in respect to the personal estate, because not executed according to the law of the domicil existing at his death.

But such wills are validated by the acts of 1856 and 1863.

It was the intention of the General Assembly by those acts, to give to all wills executed out of this state, according to the formalities prescribed by the laws of the state where executed, the force and effect as to both real and personal estate of wills executed here in accordance with the provisions of our law.

APPEAL from a decree of the court of probate of the district of Danbury, approving the will of John W. Irwin. The case was tried to the jury in the superior court before *Pardee*, J., on a plea denying the validity of the will because not attested by three witnesses as required by the statute.

It appeared on the trial that the testator was domiciled at Danbury, in this state, at the time of his death, which occurred in 1861, and that he left real and personal estate there, and that the will, which was dated December 5th, 1860, was made at Branchport in the state of New York, where he was then staying, and was executed in all respects in conformity with the laws of that state. The appellant claimed, and offered evidence to prove, that the testator at the time of executing the will had his domicil in Danbury, and requested the court to charge the jury that if such was the fact the will was not lawfully executed; and further claimed that if he had his domicil at the time of making the will in Branchport, yet by reason of his change of domicil to Danbury and his death at the latter place while so domiciled there, the will was void as not executed according to the laws of this state. The appellees claimed, and offered evidence to prove, that the testator was domiciled at Branchport at the time of executing the will, and claimed that if such was the fact the will was valid, although the testator afterwards became domiciled in this state and died while so domiciled here. The court directed the jury to find specially in their verdict where the testator had his domicil at the time of making the will, and charged

them *pro forma* that, if they should find that his domicil at that time was in the state of New York, they should find the issue for the appellees, and if in this state for the appellant.

The jury found the issue for the appellees, and that the testator had his domicil at the time of making the will in the state of New York. The appellant moved for a new trial for error in the charge.

The statutes bearing upon the case are sufficiently stated in the opinion.

*Hawley* and *Beardsley*, with whom was *Taylor*, in support of the motion.

1. If the testator was domiciled in Danbury at his decease the will in question, having but two witnesses, is invalid by our general statute regarding wills, which requires three witnesses. It is not enough that the will was executed according to the law of the state where it was made and where the testator was domiciled at the time, and that he subsequently removed to and died in this state, where a different mode of execution is required. Story on Confl. of Laws, § 473; Redfield on Wills, 404; Wheaton's Law of Nations, 188; *Nat* v. *Coons*, 10 Misso., 543; *Moultrie* v. *Hunt*, 23 N. York, 394.

2. The will in question is not within the provisions of the statute of 1856. Statutes of 1856, p. 67. 1st. This statute applies to devises of real estate only made by non-residents. If the statute is shown to apply only to devises of real estate, it would seem clear that it was intended only for persons domiciled without the state, because no reason can be suggested why the legislature should relax the general rule in favor of devises of real estate only, particularly as the effect would generally be to validate one part of a will, leaving the other invalid; and if the statute was intended for non-residents only, then it is quite clear that it was intended to apply to devises of real estate only, because wills executed according to the law of the state where the makers were domiciled would pass personal property without the aid of the statute, and a non-resident could have no personal property situated in this state. Persons living in other states are presumed to

be acquainted with their own laws and not with ours, while no reason exists why the will of a citizen of Connecticut crossing the line into the state of New York, should be executed with fewer guards or different formalities than those provided by our statute. If the statute refers to wills of non-residents only, such wills are withdrawn from the protection of the statute if the testator becomes afterwards domiciled in this state and dies here. *Moultrie* v. *Hunt*, 23 N. York, 394. 2d. If the statute applies to devises of real estate only, whether made by residents or non-residents, then the will being invalid in respect to the personal estate bequeathed, should not have been admitted to probate. *Osgood* v. *Breed*, 12 Mass., 525. Or, if admitted, should have been only probated as a will of real estate. *Deane* v. *Littlefield*, 1 Pick., 239; *Heath* v. *Withington*, 6 Cush., 501; *Holman* v. *Perry*, 4 Met., 492. 3d. The will in question is not within the terms of the statute of 1856. That statute applies to two classes of wills only—first those which convey or devise all the estate of the testator in general terms, and second, those which purport to convey or devise any real estate of the testator situated in this state. 4th. If the legislature had intended to provide by this statute that all wills executed as provided by it, and sufficiently comprehensive in their terms to pass property situated in this state, should have that effect, they would have done so, instead of carefully limiting its operation to wills containing specific provisions. 5th. The inference from the enactment of the subsequent statute of 1863, (Statutes of 1863, p. 7,) is that the statute of 1856 is to have the limited operation claimed by us.

3. The statute of 1863 does not apply to the will in question. 1st. This will is not by necessary construction embraced in the terms of that statute. If any portion of that statute applies to it, it is that which confirms the probate of wills already made. It is questionable at least whether "*made*" refers to probate, or wills, its last antecedent. But the probate of this will had not been made at the time of the enactment of that statute, nor has it yet been made. It is now

pending before the superior court as a court of probate. That statute must refer to the final probate of the will, otherwise if the decree of the Danbury probate court admitting this will should be set aside by the superior court, the statute would apply and sustain the will. 2d. Courts will not so construe a statute as to give it a retrospective operation and thereby defeat vested rights, unless required to do so in the most explicit terms. *Goshen* v. *Stonington*, 4 Conn., 209; *Thames Manufacturing Co.* v. *Lathrop*, 7 id., 550; *Perkins* v. *Perkins*, id., 558; *Plumb* v. *Sawyer*, 21 id., 351; *Woodruff* v. *Neal*, 28 id., 165; *Embury* v. *Conner*, 3 N. York, 511. 3d. If the court construe the statute of 1863 as applying to this will, then that statute in such application is void, taking as it does from the heirs-at-law of Mr. Irwin their property without compensation, and giving it to other persons. It is not competent to the legislature to do this, because it is opposed alike to the plainest principles of natural justice and to the constitution of the state. *Berlin* v. *New Britain*, 9 Conn., 175; *Plumb* v. *Sawyer*, 21 id., 351; *Mechanics' and Farmers' Bank, Appeal from Probate*, 31 id., 63; *Taylor* v. *Porter*, 4 Hill, 140; *Embury* v. *Conner*, 3 N. York, 511; Redfield on Wills, 418; *McCarty* v. *Hoffman*, 23 Penn. S. R., 507. The cases in Connecticut sustaining retrospective statutes do not vindicate this statute thus construed, because they are all cases in which the legislature interfered to remedy some formal defect which frustrated the intentions of the parties or the plain principles of right or the public good. In this case natural justice certainly does not require that the property of Mr. Irwin should go to the corporation claiming under this will rather than to his heirs-at-law. The right to devise is a municipal right, and must have some statute for its creation. *Fitch* v. *Brainard*, 2 Day, 163.

*Loomis* and *Brewster*, for the appellees.

1. The statute of 1856 validates this will. Acts of 1856, ch. 44. By this statute wills of personal as well as real property are validated which convey all the estate " in general

terms," that is, in terms which include the whole estate and not a particular kind or portion of it only; and in this will all the estate is so conveyed. See as to word " estate," 1 Jarman on Wills, 688, note 1; Redfield on Wills, 737, note 1; as to " property," *Hunt* v. *Hunt*, 7 Gray, 193; as to " situated," Story Conf. Laws, § 474; Redfield on Wills, 399, § 9; as to " general terms," 1 Jarman on Wills, page XV and 287; Code of Virginia of 1849, 518, § 15; *Schuyler* v. *Mercer Co.*, 4 Gilman, (Ill.,) 20; *Jones* v. *Jones*, 6 Shep., 308; *Bartlett* v. *Morris*, 9 Porter, (Ind.,) 266; 1 Swift Dig., 140; 2 Black. Com., 113. The loose, peculiar and exceptional language of the statute may be explained on the theory that the legislature meant the statute to apply in those cases and those only where the decedent evidently intended by his will to " convey " or " pass " some of his property in this state, which intention might be shown either by a general disposition of the whole or a specific disposition of any part in the state. Any other construction nullifies the statute.

2. It is also validated by the statute of 1863. Acts of 1863, ch. 7. By this statute the provisions of the first were explained and more clearly re-enacted, and the probate of the will was confirmed. This case is not taken from the operation of the statute because the testator when he died had his domicil in this state. *Bailey* v. *Bailey*, 5 Cush., 245; *Bailey* v. *Bailey*, 8 Ohio, 239; *Rue High, Appellant*, 2 Doug. (Mich.,) 515. Nor because of the pendency of the appeal. *Welch* v. *Wadsworth*, 30 Conn., 149; *Taylor* v. *Keeler*, id., 324; *Ballard* v. *Ridgeley*, 1 Morris, 27. Nor by the clause in the United States constitution concerning contracts. *Watson* v. *Mercer*, 8 Pet., 88. A confirmatory act which assumes to cure a formal imperfection and to carry out the intention of the maker of the imperfect instrument although retrospective can hardly be held to be " clearly unjust " or to " violate the fundamental principles of the social compact." But unless it is so held, as this court has repeatedly decided, " it is entitled to obedience." *Goshen* v. *Stonington*, 4 Conn., 226; *Mather* v. *Chapman*, 6 id., 54; *Beach* v. *Walker*, id., 190; *Booth* v. *Booth*, 7 id., 350; *Plumb* v. *Sawyer*, 21 id., 351;

*Richardson* v. *Monson*, 23 id., 94; *Hine* v. *Belden*, 27 id., 384; *Welch* v. *Wadsworth*, 30 id., 149. So defective titles have been retrospectively confirmed in numerous cases.

3. The statute of 1856 certainly carried the real estate, (*Lapham* v. *Olney*, 5 R. Isl., 413,) and the personal property was duly conveyed by this will irrespective of either statute. The better opinion is, that so far as relates to its formal execution, a will of personal property made according to *the law of the domicil of the maker at the time it is made* will be maintained as a valid will notwithstanding a subsequent change of domicil, and though the law of the last domicil requires other formalities. Chitty's Vattel (Am. Ed., 1852,) 167, and note 1; Westlake on Private Int. Law, § 326; 4 Phillimore on Priv. Int. Law, 628; Wheaton Int. Law, (Lawrence's ed. 1863,) 171; Woolsey's Int. Law, 120; Gardner's Am. Int. Law, 130, sec. 18; Drayton on Surrogates, 180; Willard on Exrs., 59; 1 Jarman on Wills, Walst. & Vin., 3d London ed., p. 5, (disavowing the position taken in the earlier editions, and referring to Williams on Exrs., which in the 5th Am. Ed.. p. 324, in a note appends to Story's dictum to the contrary a significant *quære;*) 4 Burge on Col. & For. Law, 582; *Catherine Roberts' case*, 8 Paige, 519; *Ex parte McCormick*, 2 Bradf., 169. The case of *Nat* v. *Coons*, 10 Misso., 543, had no reference to the formalities of a will, but to the validity of provisions for emancipation made in another state. That Story, the only civilian of note who holds a contrary doctrine, (Conf. of Laws, § 473,) erroneously cites from Voet on this point, is conclusively shown by Surrogate Bradford, in the learned opinion given in *Hunt* v. *Moultrie*, 3 Bradf., 322. In the cases of *Grattan* v. *Appleton*, 3 Story, 765, and *Desebats* v. *Berguier*, 1 Binney, 336, there was no change of domicil, and the only known adverse case in point is that of *Moultrie* v. *Hunt*, 23 N. York, 394, decided by an almost equally divided court, in which a majority of the judges of equal rank, though not of final authority, were of the opinion for which we contend. In that case Denio, J., bases his decision chiefly on unwarranted marginal notes of reporters and an avowed ignorance of the civil law. He

admits the question to be one of international law, as it plainly is from its very nature, and that Story's citations are not in point, but wholly ignores the English and American writers on international law, all of whom favor the surrogate's view. Of the restriction so advocated by Story, Savigny asserts that " it is unjustifiable on principle and seems to have obtained no approbation from other jurists ;" and Phillimore (4 Int. Law, 628,) says that the doctrine "is surely fraught with obvious and many inconveniences, and with the great evil of rendering difficult and uncertain that which it is one great object of civilization to render easy and certain, the validity of testaments."

BUTLER, J. We can not assent to the proposition that, irrespective of the statutes of 1856 and 1863, a will of personal estate, executed in another state according to the laws of that state but not of this, by a testator then domiciled there, who afterwards removed into this state and became domiciled and died here, is valid.

The disposition of property by will is peculiarly and necessarily a matter for local statutory regulation wherever the English common law prevails. The rules of that law which provided for and controlled such disposition were early found inadequate to protect a testator or his heirs against fraud, undue influence and imposition. To remedy some of its defects the act of 29 Charles II, chap. 3, was enacted, and from that time in England and in the states of this country such disposition of property has been regulated by statutory provision, more or less stringent in different states according to the views entertained of that necessity. As a rule those provisions are not only directory but prohibitory and exhaustive ; and such was the character of our statute of wills prior to 1856. That of 1848, the last adopted and which is still in force, provides that " all wills shall be in writing, subscribed by the testator and attested by three witnesses, all of them subscribing in his presence ; and no will or codicil shall be valid to pass any estate real or personal, unless it shall be so executed," and it contains no exception of any will which

should be thereafter made. Here then we have a statutory provision, too explicit to require construction or admit of exception, which it was competent for the legislature to pass, and in respect to a subject matter which it was their imperative duty to regulate, and which they obviously undertook to regulate fully and exhaustively, which declares not only how all wills of property subject to our own laws shall be made, but also declares that none shall be valid unless so executed; and the will of Mr. Irwin was not executed in conformity to it. Upon what principle or by what authority could we hold that will valid in the face of that statute if there were no other applicable to it? We know of none and there is none; and it is perfectly immaterial what force there may be in the argument *ab inconvenienti*, or what continental or other courts have held, or civilian jurists or writers on international law have said in respect to what equity and comity require. We must administer our local law as made, and if the property of Mr. Irwin was so within our jurisdiction as to be subject to our law, and the statute of 1848 is applicable to it, we must hold the will void; for it is very clear that if there be any rule of international law which would sustain it, which was recognized here before the act of 1848 was passed, that act abrogated it, and forbade any further recognition of it. Was then the personal estate of Mr. Irwin subject to our laws?

It is conceded that the real estate of the testator situate in this state is so fixed and immovable and a part of our own territory as to be necessarily subject exclusively to our laws, and that the will would be ineffectual to pass any title to that under the general statute. But that is also true, so far as it can by possibility be true, of his personal estate. It is a rule of international law originated by the necessities of commercial intercourse, founded on the fiction that movable property wherever situate is in the actual possession of the owner at his domicil, and universally accepted by comity with all the force of domestic law, that the personal property of every man is subject to the law of his domicil. All tranfers of that property conferring a title, whether *inter vivos* or testamentary, or

by the law regulating intestacy, if valid by the law of the domicil are valid every where. Exceptions have been attempted in respect to titles by testacy and the law regulating intestacy under the mistaken idea that to recognize such title would be to give an extra-territorial operation to a foreign law. But that is not the ground or effect of such a recognition of the title of a foreign executor or administrator, any more than it is of a title derived directly from the foreign citizen when in life. The recognition in either case is of a *title* merely, the *validity* of which is determined by the domestic law, but which is recognized in obedience to a rule of international law of universal application and acceptance. True, the foreign creditor citizen has a right to have the property situate in the foreign jurisdiction appropriated there to the payment of his debt and to take administration for that purpose; and for his protection the courts of such foreign state will refuse to aid the executor or administrator in collecting or removing such property unless he take ancillary administration and thereby secure the rights of the creditor citizen. But that right of the creditor citizen and that refusal of the courts are not based on a denial of the title of the executor or administrator. They do not prevent it from being voluntarily and safely recognized by others in the foreign jurisdiction who were the debtors or held the property of the deceased. And if ancillary administration is taken by the creditor in the foreign state he is but the deputy or agent of the domestic administrator. And if there is a deficiency of assets in either jurisdiction all the property is divided among the creditors in both jurisdictions equally, and if there is a surplus in the foreign jurisdiction it is remitted to the domestic administrator, or distributed there in recognition of and in subordination to the *title* and *rights* conferred by the will or the law of the domicil. *Marcy* v. *Marcy*, 32 Conn., 308.

Such being the rule respecting the situs of personal estate and the test whether it is subject to our law or not, it is clear that the personal estate intended by the statute is that which belongs to a *domiciled* inhabitant, and as it is found that Mr.

Irwin was domiciled here at his death, his will is within the purview of the statute of 1848.

Nor could we assent to the proposition if the statute was not prohibitory, for there is no rule of international law nor any equitable principle which would require or justify it.

Such a rule undoubtedly prevails as a domestic one in some of the countries of Europe whose jurisprudence is modeled upon the civil law, and many civilian jurists and writers on international law have expressed the opinion that such ought to be the rule every where; but it has not been adopted in any state or country where the English common law constitutes the unwritten law. On the contrary it has been repudiated in every case in England and in this country where the question has been passed upon authoritatively by a court of last resort. It was repudiated by Judge Story in his Conflict of Laws, notwithstanding his leaning to the civil law, and is repudiated by Judge Redfield, now one of the ablest jurists of the country, in his standard work upon wills. It has never had a foothold in either the English or American courts, and it never can have; for, as we have said, the laws regulating testacy and intestacy must necessarily be statutory wherever the common law prevails, and will be of varied stringency, and the rule, if otherwise general and worthy of recognition, could not be introduced by the courts. Nor is there any good reason for the adoption of such a rule.

An effort was made in the recent case of *Moultrie* v. *Hunt*, cited from the 23d New York to show, and it has also been insisted in this case, that such a will was within the rule that transfers of personal estate " *inter vivos*," or testamentary, good by the laws of the domicil, were good every where, on the ground that a will as soon as executed according to the law of the domicil was " a perfected transaction." But a majority of the court met the claim with the answer that, although perfected as an instrument (like a bond or other instrument perfected but not delivered) so that it could take effect ultimately if the legislature did not alter the require-ments of the law and so avoid it, or if the testator did not alter his mind and revoke it, and upon the event of death,

it was not an operative instrument, and therefore not within the scope of the rule, for that the rule regarded and embraced *the effect* upon the title to property or rights of an instrument which had become operative and produced an effect, and did not regard such a mere unexecuted intention, evidenced by an executed but *still inoperative* paper. To this it may be added that the ultimate operation of such a paper is contingent in still another and most important particular, viz. : that the maker shall not divorce himself and his property from the law which directed the formalities by which it was executed, and subject that property and himself to other and different laws, requiring different formalities, by a change of domicil. For if he does so divorce himself and his property from the law of the domicil where his will is made, and subjects both to a different law, by a change of his domicil, he *voluntarily prevents* it from becoming operative at his death by force of the very rule of international law which it is claimed should sustain it.

There are equitable considerations in favor of the wills of domiciled inhabitants of this state who are suddenly called upon, when out of the state on business or pleasure, to make a will, and, ignorant of the requirements of our law, or misinformed respecting it, or too ill to comprehend fully and trusting to others, make a will which is prepared for them in conformity with the law of the place of their temporary sojourn. But such considerations should be and have been successfully addressed to the legislature and not to the courts. There is no other or peculiar equity in favor of the will of a man who voluntarily and deliberately changes his domicil and subjects his property to another law and thereby prevents the operation of the will he has made. It is said it is tantamount to a revocation and that is true ; but it is the legal consequence of his voluntary act. It is further said it was not his intention that it should be revoked. That may be true in fact, but he intended the act of which it is a consequence, and there is no sufficient reason why the maxim that ignorance of the law doth not excuse should not apply as in other cases. It is said by some continental jurists that he ought not to be sub-

jected to the *inconvenience* of making another will, but that reason does not deserve a moment's consideration when addressed to the court. If he takes a new domicil, he should learn its laws and conform to them in respect to his will as in other things, and not expect that these laws will be suspended in respect to him, to suit his convenience, or because of his ignorance of them or his inattention to them. The law as administered by us must regard the will of such a man as it regards those of every other domiciled inhabitant, and can take no note of the time when or manner in which he became such inhabitant.

But we are satisfied that the will in question is within the purview of the statute of 1856 and valid.

That statute is peculiar, ambiguous and open to criticism, and it has been severely criticized. It is impossible to get a clear view of the intention of the legislature from the mere language used. But when we look also, as we should look, at the object and purpose, the mischief and the remedy, and especially when we give due consideration to the act of 1863 as, by implication, declaratory of the intention of the legislature of 1856 in passing the act, we are satisfied that it was the intention of that legislature to give all wills executed out of the state, according to the formalities required by the law of the place where executed, and whether of real or personal estate, the force and effect of domestic wills to pass all the property situate in this state.

A new trial should be denied.

In this opinion the other judges concurred.