FRANK W. HATHEWAY ET ALS. *vs.* JAMES M. SMITH, ADMINISTRATOR.

First Judicial District, Hartford, January Term, 1907.
BALDWIN, HAMERSLEY, HALL, PRENTICE and REED, Js.

The power to dispose of property by will is a privilege first recognized in this State by statute in 1638–9, and its exercise has ever since been dependent upon statutory regulation.

Hatheway v. Smith.

Our statute of wills (§§ 292, 293) provides that all persons of the age of eighteen years, and of sound mind, may dispose of their property by will; and that no will or codicil shall be valid to pass any estate unless it be in writing, subscribed by the testator and attested by three witnesses, each of them subscribing in his presence. *Held* that the statute was prohibitory and exhaustive: prohibitory, in that it forbids any disposition of property by devise or bequest which does not strictly comply with the statutory requirements; exhaustive, in that it contains the law which permits any disposition of one's property by will.

While extrinsic evidence, including written instruments, may be admissible to identify the devisees or legatees named in a will, and the property therein described, it is never admissible, although referred to in the will, for the purpose of proving a devise or bequest which the will itself does not contain. Accordingly, if the so-called will merely directs the testator's property to be disposed of in accordance with a certain deed of trust theretofore executed by him, the attempted disposition is invalid and the property must be distributed as intestate estate.

A different public policy has controlled the enactment and construction of the statute of wills in England, and the application to wills under that statute of the so-called doctrine of incorporation by reference; and the extension of this doctrine by English courts since the passage in that country of a statute of wills has been sanctioned in some of the States in this country.

In the present case the instrument approved by the Court of Probate simply revoked all former wills and directed that all the testatrix's property after her death should be disposed of in accordance with her deed of trust of even date. *Held* that the admission of this instrument to probate did not preclude her heirs at law, upon their appeal from an order of distribution subsequently made, from raising the question whether such instrument contained in law any devise or bequest whatever.

Argued January 2d—decided March 6th, 1907.

APPEAL from an order of distribution by the Court of Probate for the district of Windham, taken to and reserved by the Superior Court in Windham County, *Robinson, J.*, upon a finding of facts, for the advice of this court. *Superior Court advised to set aside the order of the Court of Probate, and to order a distribution to the next of kin of the testatrix.*

The facts appearing in the record which are material to the decision in this case are as follows :—

Roxey Foss of Willimantic died November 12th, 1902.

Her heirs at law were two sisters and the children of another sister. An instrument in writing, of which the following is a copy, was presented for probate in the Court of Probate for the district of Windham on December 11th, 1902 :—

"KNOW ALL MEN That I, Roxey Foss, of the City of Willimantic in the Town and County of Windham and State of Connecticut, do hereby revoke all wills and codicils by me hitherto made, and I do direct that my property after my decease be disposed of in accordance with my deed of trust to Frank F. Webb, Noah D. Webster and Charles N. Daniels of said Willimantic of even date herewith.

"In Witness Whereof I have hereunto set my hand and seal at said Willimantic this 10th day of September, 1901.

"Her

Roxey   x   Foss                    "Roxey Foss   L. S.
        mark."

"Signed, sealed and declared to be a revocation of all wills and codicils by her hitherto made, by the above named testatrix, Roxey Foss, in the presence of us who in her presence, and at her request and in the presence of each other have hereunto subscribed our names as witnesses.

"Charles H. Colgrove   Willimantic, Conn.
"Frank F. Webb   Willimantic, Conn.
"James M. Smith   Willimantic, Conn."

On December 19th, 1902, said instrument was duly admitted to probate as a revocation of all former wills and as the last will and testament of said Roxey Foss, and James M. Smith was duly appointed administrator with the will annexed, and qualified as such administrator. After settlement of the estate, the estate remaining in the administrator's hands for distribution consisted wholly of cash, and the administrator applied to the Court of Probate for an order of distribution. Upon this application a hearing was had January 22d, 1906. Upon this hearing a

Hatheway v. Smith.

trust deed from Roxey Foss to Frank F. Webb and others, executed and delivered prior to the execution of her said will and in existence on the day the will was executed, was produced by the administrator.   This deed had never been presented for probate nor admitted to probate as part of the will of Roxey Foss.   At the instance of the administrator said deed had been recorded on December 14th, 1904, in the Court of Probate.   The deed conveyed, with covenants of seisin and warranty, to Frank F. Webb and two others, all the grantor's real and personal property, including, with detailed description, a piece of land in Willimantic ; a mortgage on land in Willimantic ; all deposits standing in her name in seven specified savings-banks, with directions to each of said banks to transfer her entire account to said Webb and others ; all her household furniture and personal estate of every name and nature ; all her claim, interest and demand against the estate of one Congdon, and all debts, claims, dues and demands now due or to grow due to her against any and all persons. All this was conveyed in trust, nevertheless, to hold, change into any other form of property or investment, invest and reinvest according to the discretion of the trustees, and apply the income and principal thereof as follows : to furnish her, as she should request, everything for her support, care, nursing and luxury during life, one of said trustees to visit her three times a week to ascertain her desires ; to pay to themselves annually a reasonable compensation for their services under this trust ; at her decease, to pay all her just debts by her trustees contracted and her funeral expenses ; to pay the town of Windham $300, the income thereof to be applied by said town to the care of the lot in Willimantic cemetery ; to apply not exceeding one eighth of the trust property to erect a suitable monument to her memory ; to distribute and pay the residue of the trust property, one seventh to each of four persons named, and three sevenths to the town of Windham to be held by said town as a trust fund to be known as the Roxey Foss Fund, the income

thereof to be expended annually by the selectmen for specified charitable uses.

The probate judge, assuming that the legal effect of the instrument in writing admitted to probate December 19th, 1902, as a revocation of all former wills and as the last will of Roxey Foss, was the same as if the provisions made by said deed for the distribution after the grantor's death, of the trust fund therein created, had been set forth in said will, ordered the estate in the hands of the administrator to be distributed as set forth in said trust deed.

The plaintiffs, being three of the heirs at law of Roxey Foss, appealed from this decree to the Superior Court.

The Superior Court, in pursuance of a stipulation of the parties, made a finding of facts, and reserved the cause for the advice of this court as to what judgment should be rendered.

*Charles E. Perkins*, with whom was *George W. Meloney*, for the defendant.

*William A. King*, for the plaintiffs.

HAMERSLEY, J. The decree of the Court of Probate of December 19th, 1902 (subsequently confirmed by the Superior Court), may have determined only the admissibility to probate of an express written revocation of all former wills executed with the formalities prescribed for the execution of a will, and does not foreclose the question raised at the hearing before the Court of Probate upon the order of distribution, and before the Superior Court upon appeal from that order, and presented to us by this reservation. That question is: Does the writing thus admitted to probate contain any devise or bequest by Roxey Foss? If it does not, then the estate must be distributed as intestate estate, for clearly no devise or bequest can be established by parol evidence, or by documents which for purposes of proof must be treated as parol evidence. The answer to this question depends upon the meaning of our statute of wills and distribution.

"A will is the legal declaration of intention as to the disposition of one's property after death. To this intention, made known through the written declaration, the law gives effect, and so executes the testator's will." *Jacobs v. Button*, 79 Conn. 360, 362, 65 Atl. 150.

"Will," as here used, does not mean a writing containing a formal declaration that it is the last will and testament of the testator, but means the bequests and devises made by the testator and expressed in writing and made known through the writing in the manner prescribed by law. No other declaration of intention is legal. Each bequest thus expressed and made known in writing is the "will" of the testator, to which the law gives effect and executes as his will.

The disposition of property by will is a matter for local statutory regulation, and is regulated by our statute of wills. General Statutes, §§ 292, 293. The provisions of that statute "are not only directory but prohibitory and exhaustive." *Irwin's Appeal*, 33 Conn. 128, 135. The theory of our statutes is based upon our settled public policy. "Certain formalities of execution and attestation are prescribed as prerequisites to the validity of a will, and without compliance with which it is no will at all, although it is clearly a wish. . . . So that our statute amounts to a positive rule for the transmission of property, which must be complied with, as a complete act at the time of execution, or never, so far as the act of the testator is concerned. . . . Our law in effect says to every person who would make a valid disposition of his property by will, that he must observe the specified formalities." *Lane's Appeal*, 57 Conn. 182, 187, 17 Atl. 926. The right to dispose of one's property by will is one conferred by law. "The extent of the right, and the conditions under which it may be exercised, are and can be only such as the law prescribes. An expression of will failing to comply with the prescribed conditions is a mere nullity." *Stone's Appeal*, 74 Conn. 301, 302, 50 Atl. 734. "Our statute of wills is not only directory but prohibitory. . . . While

extrinsic evidence may be admitted to identify the devisee or legatee named, or the property described in a will, also to make clear the doubtful meaning of language used in a will, it is never admissible, however clearly it may indicate the testator's intention, for the purpose of showing an intention not expressed in the will itself, nor for the purpose of proving a devise or bequest not contained in the will." *Bryan* v. *Bigelow*, 77 Conn. 604, 612, 614, 60 Atl. 266.

Our statute of wills is prohibitive and exhaustive. It permits one to dispose of his property after death by will, that is, by bequest or devise, upon complying with the conditions in the statute prescribed, and not otherwise; and one condition prescribed is that each bequest shall be contained in a writing executed with prescribed formalties. In other words, the language used in the writing thus executed must denote the subject and object of the testamentary gift intended. Unless this is done no bequest is made. Parties to a written contract, possessing a plenary power in respect to the contract they may choose to make, may refer to other writings and by such reference make the agreements expressed in such other writings a part of the new contract; the exercise of this power is sometimes called "incorporation by reference." But no person has such plenary power over the testamentary disposition of his property. Under our statute of wills he has no power except that given by the statute. The power, and the only power, given by statute, is that of thus disposing of his property by means of a writing containing in itself language by which the subject and object of the testamentary gift intended is therein expressed, which writing is executed in the manner prescribed. We think this construction of our statute of wills is in accordance with the public policy indicated by our legislation and judicial decisions from the establishment of our government to the present time.

This public policy apparently differs from that recognized by the English courts in the interpretation of their statute

of wills. The difference is largely accounted for by the differing conditions which had existed in the respective jurisdictions before the enactment of the statutes. In England, prior to 1837, the regulations on this subject were to be found largely in the unwritten law, modified to some extent by the statute of frauds and perjuries enacted in 1676. That statute, enacted for the prevention of fraudulent practices upheld by perjury, provided that certain leases, agreements, declarations of trusts and contracts for sale formerly provable by parol, should thereafter be proved only by a writing signed by the person to be charged, and that devises of land, formerly provable by a writing signed by the devisor, should thereafter be provable only by such writing attested by three or four witnesses; and that nuncupative wills, formerly provable by one witness, should be proved only by three witnesses. A devise of land, apparently allowable under the ancient common law before the introduction of military tenures, was authorized to a limited extent by 32 Henry VIII., Chap. 1, and was regarded as a conveyance of land; and prior to the enactment of the statute of frauds the devisor, like any other grantor or the parties to a contract, might in his conveyance define its terms by reference to some extrinsic document, as was held in *Molineux* v. *Molineux*, 2 Cro. Jac. 144, decided some seventy years before the statute of frauds was passed. After the passage of that Act, the courts construed it as not excluding from evidence either an unattested document referred to in a duly-attested devise, or an unsigned writing referred to in a written agreement duly signed. The effect given to such construction is most strongly stated in *Bond* v. *Seawell*, 3 Burr. 1773, where Lord Mansfield says: "A will [devising land] properly attested may, by reference to another instrument, establish particular clauses so ascertained by a clear reference, as strongly as if the clauses so referred to had been repeated in the will verbatim."

This construction was applied to devises which, as conveyances of land, were within the jurisdiction of the com-

Vol. lxxix—33

mon-law courts, and did not specially relate to wills dispos-
ing of personal property, which were within the jurisdiction
of the ecclesiastical courts, and the proof of which (except
nuncupative wills) was not affected by the statute of frauds.
In 1837 the statute of wills repealed the Acts of Henry
VIII. authorizing devises of land, and the sections of the
statute of frauds relating to the proof of devises of lands
and of nuncupative wills, and enacted that it should be
lawful for every person to dispose of by his will all real
and personal estate to which he should be entitled at the
time of his death, provided no will should be valid which
was made by a person under twenty-one years of age, nor
should any will be valid unless it was in writing and exe-
cuted in the manner prescribed.   In cases arising under
this Act the English courts have apparently treated it as
one in derogation of the common law, rather than as an
Act giving the power of testamentary disposition of prop-
erty and defining the limits of the power thus given; and
have held that the decisions construing their statute of
frauds as not excluding from evidence unattested agree-
ments, deeds and devises of land which are referred to in
a duly-attested writing, must control the interpretation of
their statute of wills, so that any writing, however informal,
in which a disposition of property after death may be indi-
cated, becomes a valid bequest by mere reference to it in a
writing duly executed.   The reasons for such a treatment
of the statute of wills were considered by the judicial com-
mittee of the privy council in *Allen* v. *Maddock*, 11 Moore
P. C. 427, 452 *et seq.*   The court puts the question thus:
"Supposing the evidence [the document referred to] to be
admissible as the case would have stood under the statute
of frauds, has the wills act of 1837 altered the general law
upon the subject?"—and argues that there are no words
in the Act by which any such intention is declared; that
the statute of frauds enacts that all devises of land shall
be in writing, and executed in a certain way, or else shall
be void; that the wills act provides that no will by which
any property, real or personal, shall be devised or be-

queathed, shall be valid unless in writing, and executed in a different way; that the ceremonies necessary to authenticate the instrument are altered, but no alteration is here made in the effect to be given to words used in it;— and so concludes that a paper which would have been incorporated in a devise executed according to the statute of frauds must now be incorporated in a will executed according to the new Act.

*Allen* v. *Maddock* is a leading case of the highest authority, generally cited in support of the English doctrine of incorporation by reference, and the reasoning upon which the action of the court in that case is based may well be taken as indicating the public policy which had then developed from past conditions. This policy treated the power of controlling the disposition of one's property after death by will, like the power of disposition during life by contract, as a common-law right, and so treated the statute of wills as neither giving nor restraining that power, but as a new statute of frauds, directed only to the manner of proving its exercise for the prevention of perjury.

The very different conditions which have prevailed in this State have resulted in a different public policy. Here, the regulations on this subject were from the start to be found in the statute rather than in the unwritten law. The jurisdiction of Connecticut was established at the adoption of the fundamental orders of January 14th, 1638–9. The following October laws were passed which provided for the settling of lands, public records, and the disposition of the estates of deceased persons. Any person possessed of estate was authorized to make a will in writing, or by word of mouth. The townsmen of each town were required to take an inventory of the estate of one dying testate, and to see that such inventory and will were exhibited in court and there registered. The townsmen were required to take an inventory of the estate of one dying intestate, and the court to grant administration to the next of kin, and to divide the estate to wife, children or kindred, as in equity

it shall see meet; and if no kindred be found, to administer for the public good of the Commonwealth. Provision is made not only for the public record of all wills, inventories and administrations, but of all sales and mortgages of lands, which are not valid until recorded. 1 Col. Rec. 37, 38. A code of laws was adopted in 1650 which contained the foregoing provisions, and further provided that all persons of the age of twenty-one years and of sound mind should have power to make their wills and testaments. 1 Col. Rec. 510. In 1702 it was further provided that all persons of sound mind, of the age of seventeen years, should have power to dispose of their personal estate by will or testament. Rev. 1702, p. 1. The earliest records show wills admitted to probate which were signed by the testator but not witnessed, as well as some witnessed by two or three witnesses, and some declared by the testator before witnesses but not signed by him. 1 Col. Rec. 482–506. The privilege of making wills by word of mouth, or nuncupative wills, given by the first statute of wills, was occasionally used until 1750 and possibly until forbidden by the Act of 1821, but seems to have fallen into disuse prior to that date. *Stone's Appeal*, 74 Conn. 301, 303, 50 Atl. 734. In 1719 our statute of wills was modified by "An Act concerning Witnesses to Wills," by which it was provided that no wills or testaments "wherein there shall be any devise or devises of real estate, shall be held good and allowed for any such devise or devises, if they are not witnessed by three witnesses, all of them signing in the presence of the testator." 6 Col. Rec. 142. Prior to 1821 our statute of wills was contained in three Acts entitled, respectively, "An Act relating to the Age, Ability and Capacity of Persons," "An Act concerning Witnesses to Wills," and "An Act for the Settlement of Testate and Intestate Estates." In 1821 the provisions concerning wills, with some new provisions, were included in one Act entitled "An Act for the settlement of Estates, testate, intestate, and insolvent." Rev. 1821, p. 199. Since that time the Act thus entitled has contained our "Wills

Act," not merely directory, but " prohibitory and exhaust-ive." In 1848 an Act in alteration of this Act was en-acted, as follows : " That all wills shall be in writing, sub-scribed by the testator, and attested by three witnesses all of them subscribing in his presence ; and no will or codicil shall be valid to pass any estate, real or personal, unless it shall be so executed." Public Acts of 1848, p. 36, Chap. 41. This alteration was incorporated in the " Wills Act " ap-pearing in the Revision of 1849, and, with subsequent al-terations, in each succeeding Revision. General Statutes, §§ 292 to 414.

In this State the construction of our statute of wills was never seriously entangled with that of our statute of frauds and perjuries. The statute of wills long pre-ceded that of frauds. No Act *eo nomine* for the pre-vention of frauds and perjuries was enacted until 1771, when an Act was passed corresponding with the fourth section of the English statute of 29 Car. II. (13 Col. Rec. 422) ; and in the Revision of 1821 this Act, together with a section corresponding with section seventeen of the Eng-lish Act, was adopted as our statute of frauds and per-juries. Rev. 1821, p. 246. We have uniformly treated our statute of 1719 as a limitation of the privilege, first recognized by statute in 1639, of controlling the disposition of property after death by will, and as excluding from that privilege the power of making a devise of land except by a devise stated in a writing which is executed in the man-ner prescribed. We have treated " devise " as meaning the gift of some land to some person denoted by the lan-guage used in the writing which purports to make the de-vise, and have never sanctioned any legal fiction by which a gift of land in a writing not attested can be made opera-tive as a legal devise by reference to it in a duly-attested will which does not contain in itself any gift of any land to any person.

Reading our statute of wills now in force in the light of the conditions which have here prevailed, of its history, of the trend of our judicial decisions and of our public policy

thus indicated, we think the meaning and legal effect of that statute is this : The estate of a person upon his death comes into the custody of the law and is disposed of in pursuance of statutes framed in accordance with existing public policy.    That public policy determines the general rule for the disposition of each estate by distribution to the next of kin of the deceased, and allows to every person the privilege of controlling by will the disposition of his estate in a different manner in accord with his individual fancies. Unless the intention to avail himself of this privilege is expressed in the manner required by law, the estate must be disposed of in accordance with that general rule determined by public policy.    The statute allows to every person this privilege of individual control only upon certain conditions, and no power of individual control is given to any one who does not come within and strictly comply with these conditions.    The conditions are : The person must be of the age of eighteen years and of sound mind.    He must state the disposition, that is, the devises or bequests he desires to make, in a writing signed by him which denotes by the language therein used the bequests or devises therein contained and made.    The writing thus signed must be attested by three witnesses, each of them subscribing in the presence of the testator.    The statute is exhaustive, in that it contains within itself the law which permits a disposition of property by will upon compliance with prescribed conditions.    It is prohibitory, in that it forbids the disposition by devise or bequest of any property, real or personal, by any person who does not come within and strictly comply with these conditions.    It therefore forbids the passing of any property by force of a writing, although signed and attested in the manner prescribed for the execution of a will, which does not contain in itself any bequest of any property to any person and uses no language which can denote any such bequest, notwithstanding it may refer to some unsigned or unattested document which may contain language that would constitute a bequest if it had been used in the attested writing.

It is obvious that the public policy which must deter-
mine the construction of our statute of wills differs from
that apparently recognized by the English courts in the
cases decided under their statute of wills since its passage
in 1837, especially if these cases can be regarded as going
so far as to hold that a writing signed and attested as a
will, which contains only a reference for the discovery of
the testator's wishes to unattested documents which are
not former wills defectively executed, is competent to
change such extrinsic documents into a validly-executed
will. In so far as the modern " English doctrine of in-
corporation by reference " may go to this extent, it has
never been adopted in this State, is inconsistent with our
public policy, and contrary to our statute of wills. While
a bequest which is not contained in a document duly exe-
cuted as a will cannot be proved by parol, or by extrinsic
unattested documents (which for the purpose of such proof
are parol evidence), whether referred to in the duly exe-
cuted paper or not, yet when a bequest is contained in a
will denoting the person or persons by name, office or class,
to whom the bequest is made and the property or portion
of property bequeathed, parol evidence and extrinsic docu-
ments referred to in the will may be admitted for the pur-
pose of identifying such persons or property. The court
will give effect to the actual intention of the testator thus
expressed in the will, using for that purpose all the aids
which the law of evidence permits, and oftentimes with a
greater latitude than might be deemed allowable in deal-
ing with other writings. The line which separates a be-
quest which has no legal existence, because its essentials
are only denoted in an extrinsic document referred to in
the will, and a bequest expressed in the will itself, may
sometimes be one difficult to draw, and in some decisions
in other jurisdictions an extrinsic document, admissible as
identifying the persons or property intended by a bequest
actually denoted by the language of the will, has been ad-
mitted on the general ground that its admission came
within the doctrine of incorporation by reference. Again,

codicils have always been treated as being in law (as in their first use they were in fact) writings attached to a will and constituting with it one document, and so, when the will and codicil are separate documents, the codicil referring to, confirming and ratifying the will, may be said to incorporate a separate document by reference; and this law of wills has in some decisions been so extended that a codicil to a will defectively executed is deemed in law as attached to that will, and the legal execution of the whole document as involved in the legal execution of the codicil. It has been argued that such extension of the law governing the legal relation of a codicil to a duly-executed will, whether sound or not, necessarily involves a further extension by which any deed, letter, or writing of any kind, is deemed to be a defectively-executed will, and a subsequent duly-executed will to be a codicil to that writing. We refer to these considerations, and the distinctions they suggest, for the purpose of indicating the sources from which the English doctrine of incorporation by reference has arisen, and of pointing out that the English courts (assuming that their decisions really go to the extreme indicated by the reasoning of the court in *Allen* v. *Maddock*, 11 Moore P. C. 427) have not treated their statute of wills as exhaustive, but as leaving the former unwritten law untouched in important particulars, and have apparently recognized in the interpretation of that statute a local public policy different from that which prevails in other jurisdictions which have adopted a statute of wills " prohibitory and exhaustive." In some American cases the broad statement of the " doctrine of incorporation by reference," to be found in the English cases, has been sanctioned, but without direct consideration of the effect of the local statute of wills.

In *Newton* v. *Seaman's Friend Society*, 130 Mass. 91, an extreme statement of the doctrine is sanctioned, largely upon the authority of *Allen* v. *Maddock*. The courts in the greater number of our sister States have not had occasion to consider the question. In New York, in a case

elaborately argued, the Court of Appeals recognizes a public policy similar to that we have indicated as controlling the interpretation of their law, and holds that an extrinsic memorandum referred to in a will, which operates not to identify the subject of a bequest which is made in the will, but to denote a bequest which is not made in the will, cannot by such reference be made a part of the will, and says : " It is unquestionably the law of this State that an unattested paper which is of a testamentary nature cannot be taken as a part of the will, even though referred to by that instrument." *Booth* v. *Baptist Church*, 126 N. Y. 215, 247, 248, 28 N. E. 238; *Langdon* v. *Astor's Exrs.*, 16 N. Y. 9, 26 ; *Williams* v. *Freeman*, 83 id. 561, 567 ; *Matter of O'Neil's Will*, 91 id. 516, 523.

The precise point now decided as to the effect of our statute of wills may be stated thus : The law which admits parol proof, including documentary evidence, for the purpose of identifying the object or subject of a bequest actually made and denoted in a will, is not altered by the statute ; some documents referred to in a will and properly admitted for this purpose do practically become a part of the will and may be spoken of as incorporated by reference. The law of wills which treats a codicil as attached to the validly-executed will it modifies and ratifies, and as constituting with it one document, is not altered by the statute. (The soundness of an extension of this law so as to cover wills defectively executed need not now be discussed.) But the statute does not confer upon any one the power of disposing of his property after death by will, unless by a writing containing in itself the bequest intended to be made, denoted by language therein used, signed and attested with the prescribed public formalities ; and any rule of unwritten law allowing such a disposition by will, if any such rule existed prior to the enactment of the statute, is abrogated by force of that enactment.

The State policy which calls for this interpretation of our statute of wills deems it wise to allow some power of disposition of property after death by will ; but, recognizing

the obvious liability of such a power to abuse in its exercise, and the evil of the endless litigation, defeating the very object of granting the power, invited by the want of certainty and publicity in the Act signifying its exercise, also deems it wise to allow the power only to persons eighteen years of age having the mental capacity to make a disposition of their property at the time the disposition is made; to allow the power only to one who states the bequests made in the writing, which must be publicly proved, registered and preserved as a public record. It treats the general benefit secured by such limitation as outweighing the occasional possible misfortune that may be caused through neglect to comply with the arbitrary conditions imposed as necessary to the enforcement of the limitation.

The reasons we have indicated for the adoption of this policy were suggested in *Phelps* v. *Robbins*, 40 Conn. 250, 271, and in that case the opinion now expressed as to the meaning of our statute of wills was plainly indicated.

The public policy now generally recognized by American courts, State and Federal, treats the power of giving force after death to one's personal fancies, prejudices, likes and dislikes, by means of a paper inoperative for any purpose and subject to his sole control during life, as a privilege granted by the State, and existing only to the extent implied in the law which grants the privilege. The public policy indicated by the decisions of the English courts in construing their statute of wills, treats this power of *post mortem* control as in the nature of a natural right, the exercise of which should not be restricted unless by the clear and explicit words of a statute. The meaning and effect of the "doctrine of incorporation by reference," as applied to a will, depends largely upon a choice between these two policies. We think the American is on the whole the sounder policy, and should control in the interpretation of a State statute of wills whenever the question arises whether that statute grants the power of making wills by "reference."

In the case at bar the writing admitted to probate as

the will of Roxey Foss contains no bequest. There is no language used from which the gift of any property to any person can be gathered and affirmed. There is nothing but a bare direction that after her death her property shall be disposed of in accordance with a certain deed. If her wishes expressed only in the deed may thus be made effective as her will, her wishes expressed only in fifty deeds, letters and memoranda must be given the same effect. It may well be that the testatrix in using this language actually intended to make various bequests and devises. It may well be that one denoting certain bequests in an unsigned writing has an actual intention thereby to validly dispose of his property. Such intentions cannot be proved; they have no legal significance; the law does not give effect to intentions to do what the law forbids. The only intention that can be gathered from the language of Roxey Foss is an intent to dispose of her property in a manner forbidden by the statute of wills. Her estate is therefore intestate estate.

The Superior Court is advised to annul the decree of the Court of Probate appealed from, and to order a distribution of the estate in the hands of the administrator as intestate estate.

No costs will be taxed in this court.

In this opinion the other judges concurred.