In the Matter of the Estate of HERMAN RAUSCH, Deceased.*

Surrogate's Court, Nassau County, November 19, 1930.

* Revd., 234 App. Div. 626; order of Appellate Division reversed and that of Surrogate's Court affirmed, 258 N. Y. 327.

*Charles I. Leining*, for Locke, executor.

*Nichols & Snevily*, for New York Trust Company, executor.

*William Eastman*, special guardian of Florence Skillings, Sr., incompetent.

*Thomas R. Fay*, special guardian of Florence Skillings, Jr., infant.

*Albert Van Winkle*, for German Vice Consul.

*Cornelius C. Webster*, for Dora Rausch and others.

*Richard F. Weeks*, special guardian of Helen Rausch, an infant.

*Paul G. Gravenhorst*, for Wartburg Asylum.

*Clark, Allen, Harper & Mathews*, for Friends Hospital.

HOWELL, S.· This is a proceeding for judicial settlement of the intermediate account of the executor and administrator with the will annexed of the above-named decedent in which they seek a construction of the following clause in testator's will: " * * * and the remaining one-fifth thereof to the New York Trust Company, of New York City, New York, to be held by said Trust Company in trust for the benefit of my daughter Florence Skillings, under the same terms and conditions embodied in the Trust Agreement made between myself and the said New York Trust Company, dated April 15th, 1922, the principal to be disposed of as contained in said agreement, and which agreement is hereby made part of this my Will, as if fully set forth herein * * *."

There is filed with the court a copy of a trust agreement between the testator and the New York Trust Company, dated April 15, 1922, signed and sealed by the testator in the presence of a witness, and signed by the New York Trust Company by its vice-president and attested by its secretary under the seal of the company, whereby the testator transferred to the said trustee certain securities upon a trust accepted by the trustee to collect the dividends therefrom and so long as testator's daughter, Florence Skillings, remained a patient at the Friends' Hospital, Philadelphia, Penn., she having been judicially committed as a person of unsound mind, to pay over the same to the Friends' Hospital to the extent of $2,000 per annum; if such daughter should cease to be a patient at that

hospital, such payments to be discontinued and applied to the maintenance of the daughter as the testator should direct, or if he be not living then as his son, Arthur Rausch, and the trustee should jointly direct; if the daughter should recover her reason and be discharged from commitment, the said income to be paid over to the daughter directly. The trust agreement further provided that the testator had by last will and testament provided that if his daughter should survive him she should receive a share of his residuary estate which by his will he had directed to be paid over to the trustee to be administered in accordance with the provisions of the trust agreement; and it further provided that upon the death of the testator's daughter, if her daughter, Florence Skillings, Jr., should then be living and under thirty-five years of age, the trust should continue for her benefit until she should attain the age of thirty-five years or sooner die; the income to be paid until she reached the age of twenty-one years to the testator if living, or if not to the father, Robert Skillings, if living, or if neither be living to be applied by the trustee to the support, education and maintenance of Florence Skillings, Jr.; and that after attaining the age of twenty-one years the income should be paid over to her directly until she should attain the age of thirty-five years when the principal should be paid over to her; if she died before attaining the age of thirty-five years leaving issue surviving, the principal to be paid over to such issue, but if she so died leaving no issue the principal to be paid over to an orphan asylum in Germany; and further providing that in case Florence Skillings, Jr., survived her mother, but before attaining the age of thirty-five years should become incompetent, or if at the time of her mother's death she should be over thirty-five years of age and be incompetent, then the trustee should not pay over the principal to her but continue to hold it during her life, paying over to the testator if living, and if not to testator's son, Arthur Rausch, the income of the trust for the maintenance and support of Florence Skillings, Jr., and upon her death the corpus to pass to her issue, if any survived her, and if not to the orphan asylum.

It follows, therefore, that testator has by the clause in question in his will attempted to incorporate therein by reference and directly to make a part of his will the trust agreement in question.

Such an incorporation by reference to a testamentary instrument could not be legally accomplished under the law of this State as stated and applied in *Booth* v. *Baptist Church* (126 N. Y. 215).

In that case testator bequeathed certain legacies, " to be selected from my securities," with the further provision, " among my papers will be found a memorandum of the various securities I have

selected for the payment of the several legacies." A note in testator's handwriting signed by him was found with his will entitled, " List of securities which I wish transferred to different institutions under my will of Feb'y '85." The question presented was whether that memorandum constituted a mere identification of the things given or whether it was testamentary in character, the court asserting that unquestionably if the paper were testamentary in character it could not be incorporated into the will by reference. Holding that. the paper was testamentary in character, the court applied the rule as stated, following the dictum in *Matter of O' Neil* (91 N. Y. 516), where the court pointed out that there was no departure from that rule in the earlier case of *Tonnele* v. *Hall* (4 N. Y. 140), because the paper there involved served merely to identify and was not testamentary in character.

It remains only to inquire whether more recent decisions of the Court of Appeals have so broadened or modified the rule as to permit the incorporation attempted in the case now under consideration.

In *Matter of Fowles* (222 N. Y. 222) testator and his wife made mutual wills. The testator gave part of his residuary estate in trust for his wife for life and authorized her to dispose of part of said share by her will and further provided that in the event both testator and wife should die simultaneously or under such circumstances as to render it impossible or difficult to determine who predeceased the other it should be deemed that testator predeceased his wife and his will and all its provisions should be construed upon the assumption that he did so predecease her. Testator and his wife went down with the *Lusitania* with nothing to show which was the survivor. The wife's will was made at the same time as her husband's. In it she recited the power of appointment and undertook to execute it. The Court of Appeals held by a divided court that such attempted execution of the power was effective. Judge CARDOZO in the prevailing opinion, in which Judges HISCOCK, CHASE and ANDREWS concurred, referring to the rule against incorporation, said (pp. 232 *et seq.*): " The rule against incorporation has not been set aside. It has been kept within bounds which were believed to be wise and just. The rule is sometimes spoken of as if its content had been defined by statute, as if the prohibition were direct and express, and not inferential and implied. But the truth is that it is the product of judicial construction. Its form and limits are malleable and uncertain. We must shape them in the light of its origin and purpose. All that the statute says is that a will must be signed, published and attested in a certain way (Decedent Estate Law, § 21; Consol. Laws, ch. 13). From

this the consequence is deduced that the testator's purpose must be gathered from the will, and not from other documents which lack the prescribed marks of authenticity (*Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247). It is a rule designed as a safeguard against fraud and mistake. In the nature of things, there must be exceptions to its apparent generality. Some reference to matters extrinsic is inevitable. Words are symbols, and we must compare them with things and persons and events (4 Wigmore on Ev. § 2470). It is a question of degree (*Langdon* v. *Astor's Executors*, 16 N. Y. 9, 26, 31; *Robert* v. *Corning*, 89 N. Y. 225, 242). Sometimes the distinction is said to be between documents which express the gift and documents which identify it (*Hathaway* v. *Smith*, 79 Conn. 519, 521; *Booth* v. *Baptist Church of Christ, supra*). But the two classes of cases run into each other by almost imperceptible gradations (*Langdon* v. *Astor's Executors, supra*). One may ratify assumptions of power, extinguish debts, wipe out wrongs, confirm rights, by the directions of one's will (*Bizzey* v. *Flight*, L. R. 3 Ch. Div. 269; 1 Jarman on Wills, 99). In these and other cases, the expressions of the gift and the description of its subject-matter must often coalesce. No general formula can tell us in advance where the line of division is to be drawn.

" It is plain, therefore, that we are not to press the rule against incorporation to ' a drily logical extreme ' (*Noble State Bank* v. *Haskell*, 219 U. S. 104, 110). We must look in each case to the substance. We must consider the reason of the rule, and the evils which it aims to remedy. But as soon as we apply that test, the problem solves itself. There is here no opportunity for fraud or mistake. There is no chance of foisting upon this testator a document which fails to declare his purpose. He has not limited his wife to any particular will. Once identify the document as *her* will, it then becomes his own. He authorizes her to act, and confirms her action (*Condit* v. *DeHart, supra* [62 N. J. L. 78], at p. 81)."

Judge CRANE, dissenting, said (p. 242): " The only other claim that can be made is that the will of Mrs. Fowles must be read into that of her husband, as he gives this part of his residuary estate in accordance with her will. But here again we are met with our law which prevents the incorporation into a will of other instruments which have not been duly executed and attested as required by our statute. (Dec. Est. Law [Cons. Laws, ch. 13], sec. 21; *Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247; *Matter of Emmons*, 110 App. Div. 701; *Matter of Conway*, 124 N. Y. 455; *Keil* v. *Hoehn*, 72 Misc. Rep. 255.)

" Whether or not our doctrine of incorporation by reference would exclude the will of a wife expressly and specifically made

a part of her husband's will, both wills having been executed at the same time, need not be considered as such are not the facts in this case. The eighth clause of the will does not refer to any specific or existing will of his wife, according to which this part of the residuary estate is to pass, but has reference to the last will which she might make. Thus if she had survived him she could have changed her will as often as she pleased. Even in those states which do not follow our law, but have adopted the English doctrine of incorporation by reference, these facts would not justify reading Mrs. Fowles' will into that of her husband. (*Curley* v. *Lynch*, 206 Mass. 289.) "

And Judge McLaughlin, dissenting in a separate opinion, said (p. 244): " There is, as it seems to me, a complete answer to the suggestion. (1) There is nothing in his will which in any way refers to her will and it cannot be read into his without disregarding the rule as settled by this court that an unattested paper which is of a testamentary character cannot be taken as a part of a will even though referred to by that instrument. (*Booth* v. *Baptist Church of Christ*, 126 N. Y. 215, 247; *Matter of Will of O'Neil*, 91 N. Y. 516, 523; *Williams* v. *Freeman*, 83 N. Y. 561, 566; *Langdon* v. *Astor's Executors*, 16 N. Y. 9, 26.) "

The actual decision in that case, therefore, as appears from the opinion of Judge Cardozo, may well be sustained on a ground which would not result in overturning the rule against incor- poration as it had theretofore apparently been established to the effect that one may not incorporate in his will by reference an extraneous document testamentary in character unless such docu- ment be attested in the same manner in which under the statute a will is required to be attested. From that portion of the opinion of Judge Cardozo above quoted a tendency is apparent to treat that rule not as a hide-bound formula but as a product of judicial construction, the forms and limits of which are malleable and uncertain, which should be applied to each particular case as it arises with an eye to the origin of the rule and the reason for its application.

The dissenting opinions of Judges Crane and McLaughlin indicate that their adherence to the rule was based upon the ground that in the particular case under consideration the will of the testator did not in any way refer to the particular will of the wife there in question, and Judge Crane expressly pointed out that whether that rule would exclude the wife's will if the husband's will had expressly referred to and specifically made it a part of his will need not be considered as that was not the situation actually there presented; from which it may be inferred that the Court of

Appeals has left open for future determination the question as to whether the doctrine of incorporation by reference will prevent a testator as in the case at bar from incorporating into his will by reference a then existing and identified testamentary instrument such as the trust agreement here in question which he specifically identifies in his will and specifically makes a part of that will.

It does not seem to me that decisions subsequent to the decision of the Court of Appeals in the *Fowles Case* (*supra*) have gone that far.

In *Reynolds* v. *Reynolds* (224 N. Y. 429) the testator gave all his personal property to his executor "in trust, however, and for the purposes of paying out and disposing of same as I have advised and directed him to do." In that case, therefore, no extraneous instrument or document was referred to or incorporated in the will and the terms of the trust and of the disposition attempted depended entirely upon the oral testimony of the executor. The court held that the total failure to designate the beneficiary of the trust in the will made it to that extent an unwritten will ineffectual for any purpose under the provisions of section 16 of the Decedent Estate Law; and referring to the *Fowles Case* (*supra*) said (p. 432): "The question is whether the testamentary provision thus made is valid. Wills must be executed in compliance with statutory formalities, and are not to be enlarged or diminished by reference to extrinsic testimony which may not be authentic." And again said (p. 435): "The reasoning is plausible but uncertainty of designation and uncertainty of proof of designation are not far apart. Moreover, if this principle is applied we may incorporate into a written will, not a writing alone, but even oral statements based on the slippery memory of a single witness. The doctrine of incorporation which exists to some extent in this state, may not be invoked to read into the will the recollection of the executor. As CARDOZO, J., says in *Matter of Fowles* (*supra*, p. 232): 'The rule against incorporation has not been set aside. It has been kept within bounds which were believed to be wise and just. * * * All that the statute says is that a will must be signed, published and attested in a certain way (Decedent Estate Law, § 21; Consol. Laws, ch. 13). From this the consequence is deduced that the testator's purpose must be gathered from the will, and not from other documents which lack the prescribed marks of authenticity. It is a rule designed as a safeguard against fraud and mistake.' "

From the above it again appears that the question may still be open as to whether the doctrine of incorporation would exclude a completely authentic duly executed written document such as the trust agreement in the case under consideration although that

instrument is not attested in the manner in which the statute requires a will to be attested.

In *Matter of Lawler* (195 App. Div. 27) the court held a question of fact was presented as to whether the testator's original will had been properly executed in accordance with section 21 of the Decedent Estate Law. The surrogate had held as a matter of law that it was so properly executed and the attempt to sustain this holding involved the effect of a codicil which was unquestionably properly executed some six months after the execution of the original will, it being contended that proof of due execution of the codicil carried the original will along with it. The Appellate Division in the Fourth Department, opinion by HUBBS, J., stated that the principle set forth in the *Booth Case* (*supra*) in the following words, " It is unquestionably the law of this State that an unattested paper which is of a testamentary nature cannot be taken as a part of the will even though referred to by that instrument," had been reaffirmed by the Court of Appeals in *Matter of Fowles* (*supra*). The effect of that decision was that a codicil duly executed could not include or incorporate in itself by reference a prior alleged will which had been attested by only one witness instead of the two required by statute.

In *Matter of Perry* (126 Misc. 616) the will before the court provided for a distribution " in accordance with a sealed letter of instructions," to be handed to the trustees before decedent's death.

The surrogate held the attempted disposition invalid because of the rule long established in this State that an unattested paper of a testamentary character cannot be incorporated into a will by reference, citing the *Booth* and *Fowles Cases* (*supra*). In the *Perry* case, however, the paper involved was one not in existence at the time of the execution of the will but to be prepared by decedent at any time before her death.

In *Matter of Acres* (128 Misc. 254) the will contained a clause to the effect that all of decedent's bequests would be in her own handwriting attached to or inclosed in the will. Four slips of paper in decedent's handwriting, each purporting to make special bequests, but each dated some years after the execution, but only one of which bore decedent's signature and was not witnessed, were found in the envelope with the will. The court held that they could not be considered part of the will since in the absence of evidence showing their authentication they came squarely within the rule against incorporation. The court pointed out that prior to the *Fowles* case it seemed clear that the courts in formulating the rule as to unattested documents were referring to documents not executed by the testator as required by the Statute of Wills.

However, as Judge CARDOZO said in the *Fowles* case, the rule against incorporation should not be pressed to a drily logical extreme. On the contrary, in each case we should look to the substance, consider the reason for the rule and evils which it was aimed to remedy. The rule was designed to safeguard a testator against fraud and mistake and the foisting upon him of a will which he did not make or did not intend to make. If the particular case presented is one in which opportunity for fraud or mistake is completely eliminated the reason for the application of the rule falls. On the other hand, if the rule be carried to its strictly logical extreme it would prohibit the incorporation in a will by reference of any document however well identified which contained any testamentary provisions unless that document were executed and attested in the same manner as a will is required to be executed and attested by the statute.

In the present case there is no opportunity for fraud or mistake and there is no chance of foisting upon this testator a document which fails to declare his purpose. By the clause of his will in question he refers specifically by date and description to the trust agreement which had been made on that date between himself and the New York Trust Company and specifically made that agreement a part of his will as if the same had been fully set forth in the will itself. Unquestionably the trust agreement is testamentary in character. At the same time it was a formal document duly and properly executed by the trust company and the testator under their respective seals and in the presence of witnesses and the plain effect of the incorporation in the testator's will was to incorporate therein the provisions of this unquestionably identified document then in existence which the testator himself had executed. Under such circumstances it would seem a case of carrying the rule to its drily logical extreme to hold that the testator must have set forth in his will verbatim and at length the provisions of that trust agreement instead of referring to such agreement specifically, and specifically making its provisions a part of the will just as if they were fully set forth therein.

I feel, therefore, that in this particular case, looking to the substance of the rule and the reason for its existence, and in view of the complete elimination of any opportunity for fraud or mistake, I am well within the reasoning of Judge CARDOZO in the *Fowles* case in determining that the trust agreement in question is properly incorporated in and made a part of the will of the testator by the clause of which construction is here sought.