JOHN JAMES MASON *vs.* THE RHODE ISLAND HOSPITAL TRUST COMPANY ET AL.

Second Judicial District, Norwich, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

An equitable life estate may be created by one for the benefit of another which will be inalienable by the beneficiary and beyond the reach of his creditors.
A testator created a trust fund the net income of which the trustees were authorized and empowered, at their own discretion, to pay over to, or withhold from, the beneficiary, in whole or in part,

during his life.   Upon a suit by the beneficiary to terminate the trust, it was *held*:—

1. That the trust was valid, and continued an active one during the lifetime of the beneficiary ; and therefore could not be terminated by a court of equity without defeating the manifest and clearly expressed intent of the testator.
2. That a mere power given to the beneficiary, to dispose of the principal by his will to any or all of his lawful heirs, did not enlarge his interest or estate.

Argued April 27th—decided June 9th, 1905.


SUIT to terminate a testamentary trust and obtain a distribution of the trust estate, brought to and reserved* by the Superior Court in New London County, *Roraback, J.*, upon demurrer to the complaint, for the advice of this court. *Judgment sustaining demurrer advised.*

William H. Mason, a resident of Thompson, died in 1860, leaving a widow and three sons, his only heirs and next of kin.   The eldest son, Amasa, was the child of a former wife. The two younger, William, and the plaintiff John, were the children of his surviving widow.   John was under age at the time of the making of the will.   The will made provision for the testator's widow and each of the children.   The present controversy arises out of the fifth clause as modified by a codicil.   By this clause the sum of $60,000 in stocks is given to trustees, with directions to them to make certain appropriations of the net income thereof for the benefit of John during his minority.   These provisions have no present importance.   The original will further directs that the trustees pay over to John, after he attains his majority, the net interest or income of this fund during his life in semi-annual payments.   John is given the power to will said fund or any part thereof to his lawful wife, if he have one, or to any or all of his lawful heirs.   Failing a testamentary disposition of said fund by John pursuant to this power, it was upon his death to be distributed as if it were

*The parties in their request for a reservation stipulated that final judgment in the Superior Court should conform to the advice of this court upon the demurrer.

his estate.   The three sons were made the residuary legatees and devisees, share and share alike.

By a codicil the testator revoked so much of the provisions of said fifth clause as required the trustees to pay over the interest or income of said fund to John semi-annually, and in lieu thereof it was provided that they were authorized and empowered, " at their own discretion, and as they shall see fit and proper from· time to time," to pay over to John, after he should arrive at the age of twenty-one years, for and during his natural life, " the whole or any part, or none of the interest or income from time to time " of said fund. The codicil further provided that any accumulation of income, upon the death of John, should be disposed of in the same manner as provided in said fifth clause for the disposition of principal.   It also reaffirmed the power of appointment contained in said clause, with the addition of the provision that it was the testator's intention that such power should be considered and deemed a mere naked power and not as vesting in John, or as furnishing any evidence of any intention to vest in him, any right or title to the property itself.

The fourth clause of the will contained a gift in trust for the benefit of William, like in amount and identical in terms with that in the fifth, save the provisions relating to minority, and the codicil made the same modifications thereof as those outlined relating to the fifth clause.

The defendant Trust Company is the trustee of said fund, and has in its hands the principal thereof and certain accumulated income.

The plaintiff is the assignee of all the interest of his brother Amasa under said will, whether as residuary legatee or otherwise, and especially in the two trust funds created by said fourth and fifth clauses.

William, the third son of the testator, died in 1902, leaving no widow, child or issue.   He left a will in which, among other things, he attempted to exercise his power of appointment, under the fourth clause of his father's will and the codicil thereof, in favor of a son who predeceased him.   The

defendant Learned is the administrator with the will annexed of the estate of said William.

*Wallace S. Allis*, for the plaintiff.

*James Tillinghast* of Rhode Island, and *W. A. Briscoe*, for the Rhode Island Hospital Trust Company.

PRENTICE, J.   The plaintiff prays that the trust created and defined by the fifth clause of his father's will and the codicil modifying and confirming it, of which he is a life beneficiary, be declared terminated, and that the defendant Trust Company, as the trustee thereof, be ordered to distribute and transfer the fund and accumulations in its hands, after an accounting before the Court of Probate, two thirds to the plaintiff, and one third to the defendant Learned as the administrator *c. t. a.* of the estate of the plaintiff's brother William, deceased.   The plaintiff presents this prayer as the assignee of his brother Amasa's interest, as the sole heir of his brother William, and by virtue of his own personal rights and interests, legal and equitable.   The defendant Trust Company demurs to the complaint, which recites all the facts upon which the plaintiff relies, for reasons, in substance, that it appears therefrom that said trust has not been determined, that the purpose for which the same was created has not been accomplished, and that there has been no merger of estates in the plaintiff.

The plaintiff's contention, whatever form it is made to assume, involves the successful maintenance of the proposition that the trust in question is now a dry or naked one. On the contrary, it is an active trust.   The trustees are, by the express language creating it, vested with a full and unlimited discretionary power to pay to or withhold from the plaintiff, the beneficial life tenant, any or all of the income of the fund, the legal title to which is to remain in the trustees during the continuance of the trust.   The naked power of appointment does not enlarge the plaintiff's estate. *Mansfield,* v. *Shelton,* 67 Conn. 390.

The great current of modern authority in this country is
to the effect that an equitable life estate under which the
life tenant may have absolute rights, may, by appropriate
language, be created by one for the benefit of another, which
shall be inalienable by the *cestui que trust* and beyond the
reach of creditors. *Nichols* v. *Eaton* , 91 U. S. 716, 725;
*Hyde* v. *Woods*, 94 id. 523; *Broadway Nat. Bank* v. *Adams*,
133 Mass. 170; *Roberts* v. *Stevens*, 84 Me. 325; *Barnes* v.
*Dow*, 59 Vt. 530; *Keyser* v. *Mitchell*, 67 Pa. St. 473; *Smith*
v. *Towers*, 69 Md. 77, 97; *Steib* v.˙*Whitehead*, 111 Ill. 247;
*Lampert* v. *Haydel*, 96 Mo. 439; *Seymour* v. *McAvoy*, 121
Cal. 438; *Garland* v. *Garland*, 87 Va. 758; *Jourolmon* v.
*Massengill*, 86 Tenn. 81; *Leigh* v. *Harrison*, 69 Miss. 923,
933; *Wallace & Co.* v. *Campbell & Maxey*, 53 Tex. 229.

This plaintiff, the beneficial life tenant of this fund, took
no absolute right to income. The trustees were vested with
full discretionary power to give to or withhold from him any
or all thereof. The time, as well as the amount of the
payments they might make to him, was left in their control.
He was entitled to nothing as of right. Upon repeated oc-
casions we have either said or plainly intimated that such
provisions, annexed to an equitable life estate created for
the benefit of another, were effective to prevent the aliena-
tion by the *cestui que trust* of his interest or estate, and to
shield it from the grasp of creditors. *Leavitt* v. *Beirne*, 21
Conn. 1; *Johnson* v. *Connecticut Bank*, ibid. 148; *Farmers
& M. Sav. Bank* v. *Brewer*, 27 id. 600; *Easterly* v. *Keney*,
36 id. 18; *Smith* v. *Wildman*, 37 id. 384; *Clement's Appeal*,
49 id. 519; *Tolland County Ins. Co.* v. *Underwood*, 50 id.
493; *Huntington* v. *Jones*, 72 id. 45; *Ives* v. *Beecher*, 75 id.
564.

The testator has attempted in unmistakable language to
create a trust for the life of the plaintiff. The trust thus
sought to be established is one which the law recognizes,
and to which it attaches significant consequences, of which
the testator was plainly seeking to take advantage. A dec-
laration that its purpose had now been accomplished and its
existence as an active one terminated, would not only arbi-

trarily destroy a valid trust, but also defeat the manifest and clearly expressed intent of the testator, and create a merger of estates contrary to that intent—a result which equity does not countenance. *Donalds* v. *Plumb*, 8 Conn. 447; *Boardman* v. *Larrabee*, 51 id. 39; *Eaton* v. *Simonds*, 14 Pick. (Mass.) 98; *Smith* v. *Roberts*, 91 N. Y. 470; *Wehrhane* v. *Safe Deposit Co.*, 89 Md. 179.

The Superior Court is advised to render judgment sustaining the demurrer to the complaint.

Costs in this court will be taxed in favor of said Trust Company against the plaintiff.

In this opinion the other judges concurred.