WATERBURY NATIONAL BANK ET AL., TRUSTEES (ESTATE OF JOHN S. DYE, SR.) *v.* WATERBURY NATIONAL BANK, EXECUTOR (ESTATE OF JOHN S. DYE, SR.), ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

130

Argued November 3, 1971—decided January 4, 1972

*J. Warren Upson,* for the plaintiffs.

*James T. Healey,* with whom, on the brief, was *Frank T. Healey, Jr.,* for the named defendant et al., trustees under the inter vivos trust of John S. Dye, Jr.

*Meylert M. Armstrong III,* with whom was *Walter F. Torrance, Jr.,* for the named defendant et al., executors (Estate of Lucy W. Dye).

*Jonathan F. Ells,* for the defendant Robert C. Dye et al.

*Michael J. Falker,* for the defendant Carl A. Peterson, guardian ad litem for indeterminate heirs under trust of John S. Dye, Jr.

*Miles F. McNiff, Jr.,* pro se, guardian ad litem for the defendant John S. Dye, Jr.

HOUSE, C. J. This case has been presented on a reservation for the advice of this court. The relevant facts are contained in a stipulation of fact agreed on by all the parties.

John S. Dye, Sr., hereinafter referred to as the testator, died August 9, 1944, leaving a will dated February 27, 1939. Article fourth of the will provided for a trust, the corpus of which was the residue of the testator's estate. The will was duly probated and the estate settled and closed, the final account being accepted by the Probate Court on November 24, 1945. The plaintiffs, trustees of the trust created under article fourth of the will, duly qualified, received the residue of the estate and have administered the trust since November 24, 1945.

The testator was survived by his wife, Lucy, and by three children, John S. Dye, Jr., Robert C. Dye and Martha S. Diener. The three children are living and are over twenty-one years of age.

Prior to the execution of the testator's will in 1939 his son John, Jr., on December 24, 1936, had created a trust by agreement with the Waterbury National Bank and the testator. Although the stipulation does not state the value of the corpus of this trust at the time of its creation, the schedule of assets transferred to the trustees by the terms of the trust agreement included common stocks in nine corporations. The corpus included 60 shares of stock of Standard Oil Company of New Jersey, 200 shares of stock of Scovill Manufacturing Company, 106 shares of stock of Radio Corporation of America, and 640 shares of stock of General Electric Company. The trust is of the type known as a spendthrift trust and provides that the trustees are to use so much of the income and, if necessary, principal, as they in their discretion deem wise and expedient for the reasonable support and maintenance of the donor, John, Jr. On the death of John, Jr., if he leaves issue the corpus of the trust is to be paid over to his issue in equal shares and if he leaves no

issue then the corpus is to be paid over to his mother, Lucy Dye, if living, and, if not, then to John, Jr.'s brother Robert and sister Martha, with provision for alternative distributions in the event that they also do not survive the donor. The trust is by its terms irrevocable and contains no provision for amendment or modification. Subsequent to the creation of this trust, John, Jr., was admitted as a patient to the Fairfield Hills Hospital in Newtown, where he is still a patient. Although no conservator has been appointed for him, he is incapable of managing his affairs, and he is represented in these proceedings by a guardian ad litem. He has no issue.

Article fourth of the testator's will, which created the trust consisting of the residue of his estate, provided that the corpus should be held in trust by the Waterbury National Bank and the testator's widow Lucy and that the income and, in case of need, any principal, should be paid to Lucy during her lifetime. Thereafter followed clauses (c) and (d) of article fourth of the testator's will which have given rise to the questions presented in this case: "(c) Upon the death of said Lucy Wade Dye, or if she should die before me, or at the time of my death, I direct that the principal of said Trust Fund, or the rest and residue of my Estate, as the case may be shall be divided into three equal parts. (d) One of said three equal parts shall be added to and become a part of the Trust Fund established under an 'Agreement made the 24th day of December, 1936 between John Sinclair Dye, Jr. of Waterbury, Connecticut, hereinafter referred to as the Donor, and The Waterbury National Bank, a corporation incorporated under the laws of the United States, and John Sinclair Dye, Sr. of Waterbury, Connecticut hereinafter referred to as the Trustees.'"

One of the three equal parts was to be held in trust for the testator's daughter Martha for life with remainder to her issue. The third equal part was to be held in trust for the testator's other son, Robert, and his issue were also remaindermen. No question has been raised concerning these latter two distributions.

The foregoing brief summary of the facts recited in the stipulation submitted by the parties omits many details, contingency provisions, changes in the identity of successor fiduciaries and recitals establishing that all parties in interest are represented in the present proceedings. It suffices, however, for an understanding of the purport of the reserved questions which have arisen on the death of Lucy Dye on June 27, 1970, at which time the one-third portion on hand for distribution under clause (d) of article fourth of the testator's will had a market value of $367,345.[1] As indicated by the questions reserved for the advice of this court, the parties are at issue as to the validity, construction and effect of that clause.

At the start, it is pertinent to note that the validity of the disposition prescribed by clause (d) of article fourth of the will is not governed by the provisions

---

[1] "2. The questions upon which advice is desired are as follows:

"(a) Did John S. Dye, Sr., by his will executed on February 27, 1939, and probated after August 9, 1944, make a valid, effective bequest to the Trust Fund established under an agreement made on December 24, 1936, wherein John S. Dye, Jr. was the donor?

"(b) Should the balance on hand for distribution under paragraph (d) of Article Fourth of the will of John S. Dye, Sr. be paid over to the Trustees of said trust fund established by John S. Dye, Jr. on December 24, 1936? (Exhibit B).

"(c) Should the balance on hand for distribution under paragraph (d) of Article Fourth of the will of John S. Dye, Sr. be paid over to the heirs of John S. Dye, Sr. determined under the laws governing the distribution of intestate property in effect on August 9, 1944, the date of the death of John S. Dye, Sr.?

of § 45-173 or § 45-173a of the General Statutes. Section 45-173, entitled "Reference to Document Creating Trusts," first enacted in 1953 (Public Acts 1953, No. 442; Cum. Sup. 1955, § 2929d) was apparently the first so-called "pour-over" act in the United States. As amended by Public Act No. 575 of the 1957 session of the General Assembly, this statute now expressly permits, in certain circumstances, a bequest or devise to a trustee or trustees of an existing trust created by the testator, his spouse or a parent or child of the testator, where the trust was in existence at the time of the execution of the will and is identified in the will. It does not appear, however, that this statute has any retroactive effect. It contains no provision for retroactivity, and "[s]tatutes should be construed retrospectively only when the mandate of the legislature is imperative." *Michaud* v. *Fitzryk,* 148 Conn. 447, 449, 171 A.2d 397; *McAdams* v. *Barbieri,* 143 Conn. 405, 414, 123 A.2d 182; *Lane's Appeal,* 57 Conn. 182, 17 A. 926. Section 45-173a is entitled the "Uniform Testamentary Additions to Trusts Act." It was first adopted in 1961 (Public Acts 1961, No. 470) and is broader in scope than § 45-173. This statute by its terms has some retroactive effect but that effect is expressly

"(d) Should the balance on hand for distribution under paragraph (d) of Article Fourth of the will of John S. Dye, Sr., be paid over one-third to the estate of Lucy Wade Dye, two-ninths to John S. Dye, Jr., two-ninths to Martha Stott Diener, and two-ninths to Robert Carter Dye?

"(e) Should the balance on hand for distribution under paragraph (d) of Article Fourth of the Will of John S. Dye, Sr. be paid over to the heirs of John S. Dye, Sr., determined under the laws governing the distribution of intestate property in effect on June 27, 1970, the date of the death of Lucy Wade Dye?

"(f) Should the balance on hand for distribution under paragraph (d) of Article Fourth of the Will of John S. Dye, Sr. be paid over one-third to John S. Dye, Jr., one-third to Martha Stott Diener and one-third to Robert Carter Dye?"

limited to devises and bequests to trustees made by a will executed on or after October 1, 1961, and to any devise or bequest made by a will executed prior to October 1, 1961, "provided the testator was living on said date." Thus, neither of these statutory provisions for so-called "pour-over" trusts is controlling, since the will in question was executed in 1939 and the testator died in 1944. It is pertinent, however, to note as an indication of legislative policy that § 45-173a expressly provides that a devise or bequest to a trust "shall not be invalid because the trust is amendable or revocable, or both, or because the trust was amended after the execution of the will or after the death of the testator."

The parties who argue against the validity of the provision of the will directing the distribution of a portion of the testator's trust estate to the trust previously created by his son John, Jr., claim that the attempted disposition is invalid as an impermissible testamentary disposition, since the ultimate beneficiaries can be determined only by reference to another document not a part of the testator's will. It is their claim that in the past this court has fully rejected the doctrine of incorporation by reference and, hence, the attempted disposition is invalid.

This court has had frequent occasion to discuss the doctrine of incorporation by reference. While adhering to the cardinal rule in the settlement of estates that where possible the testator's expressed intention should be carried out, it has traditionally viewed with disfavor any device which attempts to defeat the obvious purpose of the Statute of Wills. That statute was enacted with the basic purpose of making certain that a testator's intentions as to the disposition of his property should be carried out after his death. It was enacted to obviate the danger of per-

mitting the devolution of property to depend on oral testimony and to reduce the risk of false or fraudulent documents being substituted for those which expressed the testator's true intent. *Fasano* v. *Meliso*, 146 Conn. 496, 501, 152 A.2d 512.

In *Phelps* v. *Robbins*, 40 Conn. 250, 271, decided in 1873, this court discussed the doctrine of incorporation by reference for the first time. It expressly declined to decide "[w]hether under any circumstances a paper *disposing of property*, and which is not actually embraced in the will itself, can, under our statute, be regarded as a part of the will," but held that even if it did, the separate papers in the testator's handwriting left with the will in that case did not comply with the requirements established by English common law. It did not appear that the papers were in existence at the time of the execution of the will and the will did not describe them in clear and definite terms.

There followed the well-known cases of *Bryan's Appeal*, 77 Conn. 240, 58 A. 748, and *Bryan* v. *Bigelow*, 77 Conn. 604, 60 A. 266. In *Bryan's Appeal* the court refused to admit to probate as a part of the testator's will a letter extrinsic to the will. The testator had bequeathed $50,000 to his wife, "in trust, however, for the purposes set forth in a sealed letter which will be found with the will." The letter directed that the money be paid to William Jennings Bryan. Relying on *Phelps* v. *Robbins*, supra, and assuming, without deciding, that the doctrine of incorporation by reference in a will prevailed, this court held that "[t]he will in the present case fails to comply with the required conditions under which incorporation by reference can take place in the case of wills." *Bryan's Appeal*, supra, 245. In *Bryan* v. *Bigelow*, supra, 610, the plaintiff attempted unsuc-

cessfully to introduce the same letter into evidence "to enable the court to properly construe section 12 of the will and to establish the validity of the bequest made in that section." The court stated (p. 615): The sealed letter and Exhibits 2, 3, 4 and 5 were inadmissible for the purposes of construction and interpretation, because the intended bequest described in them is not contained in the will. The gift itself fails, because it is an attempted testamentary disposition of property by an instrument not executed as a will, and which we have held not to be a part of it, without disclosing in the duly-executed will either the purpose of the bequest to the so-called trustee, or the name of the person who was to receive the benefit of the gift."

Thereafter there followed in 1907 *Hatheway* v. *Smith,* 79 Conn. 506, 65 A. 1058. The single paragraph of the will of the testatrix provided (p. 508): "I do direct that my property after my decease be disposed of in accordance with my deed of trust to Frank F. Webb, Noah D. Webster and Charles N. Daniels of said Willimantic of even date herewith." In a detailed opinion typical of his research and decisions while on this court, Judge Hamersley traced the history of our Statute of Wills since 1638–9 and the different development of the English law. He concluded (p. 519) that "the public policy which must determine the construction of our statute of wills differs from that apparently recognized by the English courts in the cases decided under their statute of wills since its passage in 1837, especially if these cases can be regarded as going so far as to hold that a writing signed and attested as a will, which contains only a reference for the discovery of the testator's wishes to unattested documents which are not former wills defectively ex-

ecuted, is competent to change such extrinsic documents into a validly-executed will. In so far as the modern 'English doctrine of incorporation by reference' may go to this extent, it has never been adopted in this State, is inconsistent with our public policy, and contrary to our statute of wills." The court noted (p. 512) that under the provisions of our Statute of Wills "the language used . . . must denote the subject and object of the testamentary gift intended. . . . The power, and the only power, given by statute, is that of thus disposing of his property by means of a writing containing in itself language by which the subject and object of the testamentary gift intended is therein expressed, which writing is executed in the manner prescribed." It noted (p. 523) that the will in question "contains no bequest. There is no language used from which the gift of any property to any person can be gathered and affirmed. There is nothing but a bare direction that after her death her property shall be disposed of in accordance with a certain deed."

These cases have since been cited several times in so-called "incorporation by reference" cases. In *Seymour* v. *Sanford,* 86 Conn. 516, 521, 86 A. 7, it was held that a letter, whether or not written at the time of the execution of the will, can neither be used to show an intent not expressed in the will nor to insert in the will a devise or bequest not there found. The court stated, however, that "[s]uch an instrument may be used to help interpret the doubtful language of a will, to identify a devisee or legatee, or the property described in the will." In *Peyton* v. *Wehrhane,* 125 Conn. 420, 433, 6 A.2d 313, the principle was reiterated that a reference in a will to letters the testator intended to write in the future will not make them effective as testamentary provisions. Again, in

*Nash* v. *Danbury National Bank,* 138 Conn. 676, 682, 88 A.2d 397, it was held that a memorandum not in existence at the time of the execution of the will may not be incorporated by reference into the will so as to control the disposition of the testator's estate. In *Barnes* v. *Viering,* 152 Conn. 243, 246, 206 A.2d 112, this court again referred to *Hatheway* v. *Smith,* supra, and held that a letter, although witnessed by three witnesses but which made no disposition, was not a will and extrinsic evidence could not be used to supply a dispositive provision which would make the letter a will. "The will must contain language which in and of itself expresses the testamentary gift intended."

It will at once be noted that the present case differs in material degree from each of the cases mentioned. We have not discovered nor have the parties referred us to any decision of this court which has considered the validity of such a disposition as that provided by clause (d) of article fourth of the testator's will. In the present case the testamentary gift is clearly specified in the will. It is the remainder of the residuary trust held for the life of the testator's wife. It is to be added to and become a part of the trust fund established under a preexisting trust agreement which is clearly identified by name, date and parties. The testator was a party to that trust agreement. The donee-trust is an active trust and exists as a distinct and definite entity. The parties have stipulated that the trust was created prior to the execution of the will. By its terms it is irrevocable. By law it is not subject to amendment. *Adams* v. *Link,* 145 Conn. 634, 640, 145 A.2d 753; *Mason* v. *Rhode Island Hospital Trust Co.,* 78 Conn. 81, 84, 61 A. 57; see *Connecticut Bank & Trust Co.* v. *Hurlbutt,* 157 Conn. 315, 324, 254 A.2d

460. As the court observed in *Swetland* v. *Swetland,* 102 N.J. Eq. 294, 296, 140 A. 279, where the court held valid a similar bequest to a preexisting trust, "regardless of what the rule is in New Jersey with respect to the doctrine of incorporation by reference, and about which there seems to be some contrariety of view, . . . [t]he trust to which this bequest is added is not theoretical, nebulous, intangible or incapable of identification, but exists in fact, and the trustee-legatee is as distinct and definite an entity as would have been an individual or corporation legatee."

We are not persuaded that the Connecticut cases to which we have referred require a holding that the subject bequest is invalid or that the testator's evident intent cannot be effectuated. The validation of the bequest would be "neither a relaxation nor a weakening of the effects of the statute of wills, nor a conscious or sinister or reprehensible attempt to avoid the desirable purposes for which the statute of wills was enacted." McClanahan, "Bequests to an Existing Trust – Problems and Suggested Remedies," 47 Cal. L. Rev. 267, 282.

We find ourselves in accord with the observations of Chief Judge Cardozo, writing for the New York Court of Appeals in *Matter of Rausch,* 258 N.Y. 327, 179 N.E. 755, 80 A.L.R. 98. In that case a testator by his will left one-fifth of his residuary estate to be held in trust for the benefit of his daughter on the same terms and conditions embodied in an existing irrevocable and unamendable trust agreement between himself and the trust company legatee. Chief Judge Cardozo wrote (p. 333): "Much will depend upon the extent to which the door is likely to be left open to chicanery or mistake if there is a relaxation of the requirement of a self-sufficient

integration. The rule against incorporation is not a doctrinaire demand for an unattainable perfection. It has its limits in the considerations of practical expediency that brought it into being." He further observed (p. 331): "The rule against incorporation, well established though it is, is one which will not be carried to a 'drily logical extreme.' . . . It is one thing to hold that a testator may not import into his will an unattested memorandum of his mere desires and expectations, his unexecuted plans. . . . It is another thing to hold that he may not effectively enlarge the subject-matter of an existing trust by identifying the trust deed and the extent and nature of the increment. . . . The mind rebels against the formalism that would invalidate a bequest for no better reason than the omission to state the purpose of the trust again. . . . (p. 332) Here the extrinsic fact, identifying and explaining the gift already made, is as impersonal and enduring as the inscription on a monument."

Our conclusion that the disposition made by clause (d) of article fourth of the testator's will is valid is in accord with the position taken by Restatement (Second), 1 Trusts § 54, by 1 Scott, Trusts (3d Ed.) § 54.3, by 1 Bogert, Trusts and Trustees (2d Ed.) § 105, and followed in most jurisdictions. See annotation, " 'Pour-Over' Provisions from Will to Inter Vivos Trust," 12 A.L.R.3d 56.

Questions (a) and (b) reserved for the advice of this court are answered "Yes." The remaining questions are answered "No."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.