[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Gordon C. Andrews, has appealed from a decision of the Probate Court for the district of Fairfield fixing his compensation as an executor and denying his request for attorney's fees. Andrews is the executor of the estate of John Stark Gorby. At the close of the probate proceedings, Andrews submitted an accounting which included two bills. One bill, in the amount of $45,898, was for his services as executor. The other bill, in the amount of $28,064, was for his services as attorney to the estate. The defendant, John T. Gorby, the testator's son, objected to the amounts demanded by Andrews for his services as both executor and attorney. He presented no evidence that Andrews failed to complete his duties or committed a breach of his fiduciary duty, but based his objection solely on the ground that the fees were unreasonable. The Probate Court approved the probate accounting except as to the amounts sought for the executor's fee and the attorney's fees. The court ruled that Andrews receive $28,000 in fees for his work as an executor and no compensation for his work as an attorney. Andrews has appealed those decisions. General Statutes § 45a-186 provides the right to appeal to the superior court. "[A]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise CT Page 2164 specially provided by law, may appeal therefrom to the superior court for the judicial district in which such court of probate is held." General Statutes § 45a-186. Andrews is an aggrieved person. See Cunningham v. Parsons, 27 Conn. Sup. 110, 111-12,231 A.2d 88 (1966).
Except as discussed infra, "[a]n appeal from probate is not so much an `appeal' as a trial de novo with the Superior Court sitting as a Probate Court and is restricted by a Probate Court's jurisdictional limits." Gardner v. Balboni, 218 Conn. 220, 225,588 A.2d 634 (1991).
 I
The rule governing executor's fees in Connecticut is that the fees must be just and reasonable. Hayward v. Plant, 98 Conn. 374,119 A. 341 (1923). In Hayward, the supreme court enumerated the factors to be considered in determining if the requested fees are reasonable: the size of the estate, the responsibility involved, the character of the work required, the special problems and difficulties met in doing the work, the results achieved, the knowledge, skill and judgment required of and used by the fiduciaries, the manner and promptitude in which the estate has been settled, the time and service required, and any other circumstances which may appear in the case and are relevant and material to this determination. Id., 384-85. Applying these criteria, the requested executor fees of $45,898.31 in the present case would not be just and reasonable. This is not a particularly sizeable estate, requiring considerable work or responsibility. The gross estate is valued $839,939.00. Notably, corporate executors have commonly and customarily charged fees of two or three percent of the estate. Wolfgang v. Cowell, Superior Court, JD of Stamford-Norwalk, No. 84829 2 CONN. L. RPTR. 730, 733 (1990). The requested fees of $45,898.31 in this case far exceed the fees calculated pursuant to those percentages. Two percent of the gross estate of $839,939.00 is $16,798.78; three percent is $25,198.17. There was no evidence presented of special circumstances or difficulties that would entitle the plaintiff to the requested executor fees.
However, the will of the deceased stipulates to a method of compensation for the executor. It provides in part: "My Executor . . . shall be entitled to compensation in accordance with fees then payable for Estate Settlement services as published by said UNION TRUST COMPANY in its then effective Personal Trust Fee CT Page 2165 Schedule. . . ." This schedule takes a percentage of the estate's value. The estate's value, according to the schedule, is the sum of the gross estate and a percentage of the assets included for the purpose of the federal estate tax.
The general rule is that "[w]here the governing instrument — whether a will or a trust — stipulates either the amount of the fee or the method of its calculation, that provision is . . . binding on the executor or trustee as a matter of contract when the fiduciary accepts the appointment under the instrument. Such provision is equally binding on the beneficiaries and the administering court either as a matter of contract or as a matter of testamentary intent, or both." Wolfgang v. Cowell, supra, citing 34 C.J.S., Executors Administrators, §§ 869, 872; Bogert, Trusts Trustees, § 976 et seq. (2d ed. 1983); Comment, "Executors and Administrators — Effect of Testamentary Provisions on Executors' Fees," 38 Mich.L.Rev. 381 (1940); Comment, "Compensation of Fiduciaries," 42 Yale L.J. 771 (1933); see also 6 Page on Wills (Bowe-Parker Rev.) § 57.14; cf. DiSesa v. Hickey,160 Conn. 250, 264-66, 278 A.2d 785 (1971) (recognizing that a testator may specify in the will the measure of an executor's compensation, although the court was unable to determine the testator's particular intent because of an ambiguous direction in the will).
"Most financial institutions which act as fiduciaries have formulated and published fee schedules. These published fee schedules are generally based on percentages of the value of the assets in the estate or of the income from a trust. Since the fees are published, it could be presumed that the testator, in naming the bank or trust company as executor or trustee of [his or her] estate or trust was aware of its charges or was at least aware of the method of computing the fee." Berman, "Compensation in Probate," 1 Conn.Prob.L.J. 205, 212 (1986).
Fees calculated from a fee schedule are neither per se unreasonable nor per se reasonable. Berman, op.cit., 212-13. "[F]iduciary fees still must be evaluated according to the reasonableness standards established by Connecticut case law." Id., 213. In Wolfgang v. Cowell, supra, the court held that it was bound by the provisions of the will with respect to the fiduciary's fee. The court also found that the published fee schedule did not offend "`an established rule of law or public policy.'" Id., 2 Conn.L.Rptr. 733. The court explained that if "the appellants [were] able to prove that [the executor] did not CT Page 2166 perform its duties as an executor, or that its fees were sooutrageous as to [deviate] from any reasonable standard ofmeasure, [then] this court [could] question whether a public policy had been offended." (Emphasis added.) Id.,2 Conn.L.Rptr. 734. "Thus it is generally recognized that the testorial intention, even where clearly ascertainable, must yield to an established rule of law or public policy if is in conflict therewith." Estate of Bertha Von Der Goltz, 7 Conn. Prob. L. J. 263, 268 (1992).
Many probate courts have not followed a percentage based fee schedule of fiduciary compensation because of our state's public policy that the compensation be evaluated according to the reasonableness standards set out in Hayward v. Plant, supra,98 Conn. 384-85. See Estate of Stella Macgonigal, 7 Conn.Prob.L.J. 37 (Prob.Ct. Dist. of Stratford) (1991); Matter of Anne M. WestTrust, 3 Conn.Prob.L.J. 287 (Prob.Ct.Dist. of Westport) (1987);Estate of E., 1 Conn.Prob.L.J. 68 (Prob.Ct.Dist. of Essex) (1985). Fees based on a percentage, however, are not necessarily objectionable in all cases. Estate of Marie D. Fach, 8 Conn.Prob.L.J. 10, 15 (Prob.Dist.Ct. of Essex) (1993); see also Berman, op. cit., 1 Conn. Prob. L. J. 212. On the other hand, fee schedules are commonly used, without an explicit direction in the will, as a basis for computation of reasonable compensation for an executor. Edward F. Rodenbach and Gayle B. Wilhelm, "Compensation of Fiduciaries and their Counsel in Connecticut," 3 Conn. Prob.L.J. 295, 303 (1988).
Several reasons, none alone necessarily sufficient, collectively convince this court that in exceptional circumstances, the Probate Court may depart from the schedule for compensation of a fiduciary provided for in a will, and award such a fiduciary reasonable compensation.
Firstly, since the court may take judicial notice of human nature and of the motives which influence and control human action; Howe v. Raymond, 74 Conn. 68, 72, 49 A. 854 (1901); it may judicially notice that most people, when considering the terms of their last will and testament, or in planning their estates, do not give nearly as much attention, if they give any, to the matter of the compensation of their estate's or trust's fiduciary as they do the disposition of their estate to the natural objects of their bounty or to minimizing unnecessary tax consequences in their estate planning.[1] Estate of Macgonical, 7 Conn. Prob.L.J. 37, 45 (Prob.Ct. Dist. of Stratford 1991). Such is the case here.[2]
CT Page 2167
Secondly, while
 [i]t is axiomatic that the intent of the testator should be carried out to the fullest extent permitted by law . . . it is universally recognized that the testator's intention, even where clearly ascertainable, must yield to an established rule of law or public policy if it is in conflict therewith. 80 Am.Jur.2d, [Wills], § 1141 . . . at 253. Two Connecticut probate cases bear directly on this point, both reported in The Connecticut Probate Law Journal. In Estate of E, [1 Conn.Prob.L.J. 68 (1985)] the Essex Probate Court declined to implement that portion of the decedent's Will which directed that the fiduciary's fees be those awarded to New York executors and trustees by statute. . . . The court found that the fees being charged were `not consistent with Connecticut policy and law as to reasonableness.' Id. at 72. The Westport Probate Court, in the matter of Anna M. West Trust, 3 Conn.Prob.L.J. 287 (1988), construed a similar provision in a trust. The Court specifically construed the New York Surrogate's Court Procedure Act, § 2309, which mandated double commissions. The Court observed: `the statutory language fixing such compensation strictly on the basis of value is mandatory. It, therefore, represents a fundamental difference in approach and policy from that reflected by the standards of our Connecticut law on the subject.' Id. at 290. It further went on to conclude that `to allow the application of the New York statute in this case would be contrary to the public policy of our State. Our Legislature has chosen not [to] intervene in this area of the law and has permitted the decisions of our courts to determine what the standards and rules are regarding the compensation of fiduciaries.' Thus, our public policy is as clear as it is contrary to the simple percentage method of fixing such compensation. The Court cannot, therefore, give effect to the New York law, as it would violate the positive policy of the law of Connecticut. . . . The Court went on to establish the trustee's fees on the basis of the standards set forth in Hayward v. Plant, 98 Conn. 374, 119 A. 341 (1923). Those standards are also specifically incorporated into the Connecticut Probate Practice Book, (3d. Ed., rev. 1990), Part I, Chapter IV, p. I-38. In commenting upon the standards set forth in the Hayward case, the Practice Book note[s]: `a fiduciary must set his fee in good faith and be able to justify it if its reasonableness is challenged by an interested party or the court of probate. Therefore, a fiduciary should maintain complete and accurate records of all time spent and actions taken in carrying out his duties, so that CT Page 2168 he can relate his charges directly to the tasks he has performed.' Id.
Estate of Macgonigal, supra, 7 Conn.Prob.L.J. 42-44 (1991).
The Probate Practice Book rules are promulgated by the justices of the supreme court on the recommendation of the probate court administrator, with the assistance of the Probate Assembly, according to statute; General Statutes § 45a-78[3]; and subject to the disapproval of the General Assembly. General Assembly § 51-15(b).[4] Such rules are "laws".Steadwell v. Warden, 186 Conn. 153, 163-164, 439 A.2d 1078
(1982) (Shea, J., dissenting). Moreover, in light of the right of the General Assembly's right of disapproval, "[i]f a [rule] has been in existence for a substantial period of time and the legislature has not sought to override the [rule], this fact, although not determinative, provides persuasive evidence of the continued validity of the [rule]." Dugas v. Lumbermens MutualCasualty Co., 217 Conn. 631, 642, 587 A.2d 415
(1991).
Thirdly, a measure of deference is now owing our Probate Courts with respect to the matters committed exclusively to their primary jurisdiction. "[I]t is . . . well established that courts should accord deference to the construction given the statute by the agency charged with its enforcement. State Board of LaborRelations v. Board of Education, 177 Conn. 68, 74, 411 A.2d 28
(1979), quoting Anderson v. Ludgin, 175 Conn. 545, 555,400 A.2d 712 (1978). . . . This deference by the courts to administrative decisions is based on several factors. These factors are the respect due to the governmental agencies charged with administration, their competence, expertness, experience, and informed judgment and the fact that they frequently are the drafters of the law they interpret. . . . 2 Am.Jur.2d, Administrative Law, § 242." (Internal quotation marks omitted.)Connecticut Education Assn. v. Board, Labor Relations, 5 Conn. App. 253,266, 498 A.2d 102 (1985).
Although the Probate Court is not an administrative agency but a court of limited jurisdiction; Marcus' Appeal from Probate,199 Conn. 524, 528, 509 A.2d 1 (1986); it is also a court of specialized jurisdiction. In Connecticut, "the Probate Court, by virtue of its long-standing statutory authority, has exclusive jurisdiction over matters involving the validity of wills and the settlement of estates." Dunham v. Dunham, 204 Conn. 303, 328, CT Page 2169528 A.2d 1123 (1987). Over the years, its jurisdiction has been expanded, most recently in 1993. See Public Act No. 93-279 §§ 6, 7. By statute, the Probate Court is now charged with the primary jurisdiction "to (1) grant administration of intestate estates . . . (2) admit wills to probate of persons who have died domiciled in their districts or of nondomiciliaries whose wills may be proved in their districts . . . (3) except as provided in section45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the probate court, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property; (4) except as provided in section 45a-98a, construe the meaning and effect of any will or trust agreement if a construction is required in connection with the administration or distribution of a trust or estate otherwise subject to the jurisdiction of the probate court, or, with respect to an inter vivos trust, if that trust is or could be subject to jurisdiction of the court on request for an accounting pursuant to section 45a-175, provided such an accounting need not be required; (5) to the extent provided for in section 45a-175, call executors, administrators, trustees, guardians, conservators, persons appointed to sell the land of minors, and attorneys-in-fact acting under powers of attorney created in accordance with section 45a-562, to account concerning the estates entrusted to their charge; and (6) make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state." General Statutes § 45a-98(a). It also has concurrent jurisdiction with the Superior Court over petitions to terminate parental rights; General Statutes §§ 45a-706 to 45a-719; "a most serious and sensitive judicial action." (Internal quotation marks omitted.) In re BabyGirl B., 224 Conn. 263, 279, 618 A.2d 1 (1992).
As the Bar has become more specialized and because superior court judges, selected from that Bar, are, of necessity, generalists; Indian Head, Inc. v. Allied Tube Conduit Corp.,817 F.2d 938, 946 (2d Cir. 1987); the expertise of our Probate Court judges has become more telling than earlier years when virtually all law practices included a good deal of probate work. While historically they were not required to be attorneys; In re Peck,88 Conn., 447, 451, 91 A. 274 (1914); Probate Court judges must CT Page 2170 now complete a rigorous training program established and supervised by the probate court administrator. General Statutes § 45a-27.[5] A probate judge who fails to complete the training program may be referred to the Council on Probate Judicial Conduct for failure to maintain professional competence. General Statutes § 45a-27a.[6] This court judicially notices that even before the enactment of those statutes, for several years Probate Court Administrators have pursued a policy of enhancing the professionalism of our Probate Court judges and the efficiency and accountability of our Probate Courts. While historically, an appeal from the probate court to the superior court entitled the parties to a trial de novo; Bristol v. Brundage, 24 Conn. App. 402,407, 589 A.2d 1 (1991); in apparent recognition of the competence, expertness and experience of our probate judges, the legislature in 1982 amended the probate appeal statute to provide: "Appeals from any decision rendered in any [probate court] case after a record is made under sections 51-72 and 52-73 shall be on the record and shall not be a trial de novo." See General Statutes § 45a-186[7]; Public Act No. 82-472 § 174. This, of course, is the same basis on which the Superior Court reviews appeals from administrative agencies; Ratick Combustion, Inc. v. State Heating,Piping Cooling Work Examining Board, 34 Conn. App. 123, 128,640 A.2d 152 (1994); Brunswick v. Inland Wetlands Commission,29 Conn. App. 634, 636, 617 A.2d 466 (1992); O'Donnell v. PoliceCommission, 4 Conn. App. 196, 199, 493 A.2d 270 (1985); General Statutes § 4-183(i);[8] to whose interpretation of the law the superior court and our appellate courts often defer in appropriate cases. Pepe v. New Britain, 203 Conn. 281, 290, 524 A.2d 629
(1987); Texaco Refining Marketing Co. v. Commissioner, 202 Conn. 583,599, 522 A.2d 771 (1987); Sutton v. Lopes, 201 Conn. 115,120, 513 A.2d 139 (1986). Finally, since 1985, the Connecticut Probate Law Journal has served as a vehicle for the reporting of the opinions of the probate judges, thereby further refining the system of probate jurisprudence, and has provided a forum for erudite articles and essays in the area of probate law. No one who reads the judicial opinions contained in those several volumes can be but impressed with the judges' scholarship and facility with probate law.
Fourth, in Kaiser v. Second National Bank of New Haven,123 Conn. 248, 193 A. 761 (1937), and Baydrop v. Second National Bank,120 Conn. 322, 180 A. 469 (1935), the Supreme Court held that there were circumstances which warrant a trustee being entitled to compensation in addition to that provided by the original trust instruments. It requires no great leap of logic to conclude that CT Page 2171 there may be circumstances in which a fiduciary may be entitled to less compensation than that provided in a testamentary instrument.
Although we have not "by any means abandoned logic in our reasoning"; Connecticut Bank Trust Co. v. Chadwick, 217 Conn. 260,277-278, 585 A.2d 1189 (1991); "[t]he life of the law has not been logic: it has been experience." Holmes, The Common Law (2d Ed. 1963 Harvard University Press), p. 5. Holmes' aphorism is apropos to the issue before the court since that issue is one which is not susceptible of any absolute truth. Note, "Executors and Administrators- Effect of Testamentary Provisions on Executors' Fees," 38 Mich.L.Rev. 381-390 (1940). As discussed supra, several reported probate court decisions and Judge Berman's article on "Compensation in Probate," 1 Conn.Prob.L.J. 205, 212 (1986), recognize that there are circumstances where the fee schedule incorporated by reference in a will or trust instrument ought not be followed, and that the fiduciary should be limited to reasonable compensation. See also Spencer v. Hartford NationalBank Trust Company, Superior Court, Judicial District of Litchfield, No. CV80-0031256 (9 Conn.L.Trib. No. 1, p. 14) (1982) (Kremski, J.). It does not appear that such a rule has damaged the fabric of probate law. To the contrary, the experience, however tentative, is that the rule has worked substantial justice. Here, however, this court limits its holding: a probate court may depart from the fee schedule incorporated by reference into a will where there are exceptional circumstances for doing so.
Here, several factors converge to give rise to such an exceptional circumstance. First, the terms of the fee schedule in this case and in these circumstances, are absurd. The fee schedule provides that the fiduciary's fee shall be a percentage not only of the assets of the gross estate, which is valued at $839,939.00, but also a percentage of the assets included solely for the purpose of the federal estate tax, an additional $614,621.00. InSpencer v. Hartford National Bank Trust Co., supra, 9 Conn.L.Trib. No. 1, p. 14, Judge Kremski considered whether an executor could include in its fee computation the value of trust assets which were not probate assets, and therefore not the executor's responsibility. Concluding that the executor could not, Judge Kremski observed that "[t]here is no control exercised by the executor over these trust assets nor any duties with regard to these assets. Thus the inclusion of these trust assets . . . in evaluating the services, duties and responsibilities of the fiduciary in setting the fee is not consistent with the requirements set out in Hayward v. Plant, supra, [98 Conn. 374] CT Page 2172 . . . ." Id., 9 Conn.L.Trib. No. 1, p. 15. In the present case, many of the assets included in the $614,621.00 were also included in trusts previously set up by the plaintiff for the deceased. The plaintiff received compensation for his services as trustee for these inter vivos trusts. To allow the $614,621.00 to be included in the total value of the estate for the purpose of calculating the executor's fees would be double charging the estate and double compensating the plaintiff for his services. This is unreasonable, absurd and unjust.
Second, the court finds that, in fact, the application of the fee schedule in this case would produce an amount of compensation to the plaintiff manifestly excessive in relation to the value of the work he performed and the other criteria set forth in Haywardv. Plant, supra, 98 Conn. 384-385.
Third, the fee schedule incorporated by reference into the will and admitted into evidence at trial did not exist at the time the will was executed.[9]
Fourth, the plaintiff executor was the drafter of the provision for fiduciary compensation of which he is now the beneficiary. In cases involving alleged undue influence on a testator, the long-standing rule is: "`If a paper is executed with the requisite formalities of a will, and the person signing it is shown to have sufficient capacity to make a will, the presumption is that it was executed freely and without undue or improper influence until the contrary appears, and the burden of proof is, therefore, upon the party alleging undue influence. That burden, however, becomes shifted whenever the person who drafts the will or participates in procuring its provisions from the testator, also occupies a relation of special confidence toward the testator, and at the same time is made specially benefitted [benefited] by the terms of the will. The reason for this rule is that hisconfidential relation may have enabled him to exercise acontrolling influence over the testator in his own behalf inprocuring the provisions of the will from the testator. The burden is therefore placed upon him to show, by a fair preponderance of proof, the fairness of his own conduct. This rule applies only when the beneficiary or the confidential person drafts the will, or takes part in procuring from the testator its terms and provisions for some one else to reduce to writing. It does not apply where the confidential relation only exists between the testator and the beneficiary. There must be some participation in the procurement of the will.'" (Emphasis added.) Richmond'sCT Page 2173Appeal, 59 Conn. 226, 245-246, 22 A. 82 (1890); see Pepin v. Ryan,133 Conn. 12, 15-16, 47 A.2d 846 (1946); Page v. Phelps, 108 Conn. 572,581-582, 143 A. 890 (1928); Kirby's Appeal, 91 Conn. 40, 45-44,98 A. 349 (1916); Lockwood v. Lockwood, 80 Conn. 513, 522,69 A. 8 (1908). Notably, the plaintiff was not an heir-at-law of the testator nor a natural object of the testator's bounty. SeeSalvatore v. Hayden, 144 Conn. 437, 441, 133 A.2d 622 (1957).
The instant case does not involve a claim of undue influence on the testator as would vitiate his will. That body of law, however, is instructive and relevant by analogy since the plaintiff, who was in a confidential relationship with the testator, drafted a will which named him as executor and provided for fiduciary compensation in excess of what was reasonable. Anything in excess of what was reasonable compensation was the functional equivalent of a bequest to the plaintiff. In such a circumstance, it is appropriate to cast on the fiduciary the burden of proving by a preponderance of evidence that the peculiar provision was the product of the testator's intent. Notwithstanding his testimony, the plaintiff here has not satisfied that burden. The evidence on this issue is equivocal.
 II
The defendant next argues that the Union Trust Company fee schedule referred to in the codicil to the will cannot be incorporated by reference into the will because it was not in existence at the time the will was executed. The court agrees.
The codicil to the will provides in relevant part: "My Executor or Successor Executor shall be entitled to compensation in accordance with fees then payable for Estate Settlement services as published by said UNION TRUST COMPANY in its theneffective Personal Trust Fee Schedule . . . ." (Emphasis added.) The parties do not dispute that the intent of this clause is that the fee schedule in effect after the testator's death governs. A representative of Union Trust Company testified that the fee schedule offered by the plaintiff at trial and admitted into evidence was effective July 1, 1991. The testator died in March 1989.
The doctrine of "incorporation by reference" provides that "an unattested instrument can be incorporated in a will by reference to it in the will, with the effect that it becomes a part of the will." 1A Scott on Trusts (4th Ed. Fratcher) § 54.1. CT Page 2174 "While adhering to the cardinal rule in the settlement of estates that where possible the testator's expressed intention should be carried out," the Supreme Court "has traditionally viewed with disfavor any device which attempts to defeat the obvious purpose of the Statute of Wills." Waterbury National Bank v. WaterburyNational Bank, 162 Conn. 129, 135, 291 A.2d 737 (1972).
Our Statute of Wills provides in pertinent part: "A will or codicil shall not be valid to pass any property unless it is in writing, subscribed by the testator and attested by two witnesses, each of them subscribing in the testator's presence. . . ." "The theory of our statutes is based upon our settled public policy."Hatheway v. Smith, 79 Conn. 506, 511, 65 A. 1058 (1907). Our Statute of Wills "was enacted with the basic purpose of making certain that a testator's intentions as to the disposition of his property should be carried out after his death. It was enacted to obviate the danger of permitting the devolution of property to depend on oral testimony and to reduce the risk of false or fraudulent documents being substituted for those which expressed the testator's true intent." Waterbury National Bank v. WaterburyNational Bank, supra, 162 Conn. 135-136; see Hatheway v. Smith, supra, 79 Conn. 511-512.
In Nash v. Danbury National Bank, 138 Conn. 676, 683,88 A.2d 397 (1952), the court held that a memorandum not in existence at the time of the execution of the will "may not be incorporated by reference into the will so as to control the disposition of the testator's estate." That holding remains the law.[10] Indeed, the rule expressed in Nash accords with the general rule prevailing in the United States. Bogert, Trust and Trustees (2d Ed. Rev.) § 105; 1A Scott on Trusts (4th Ed. Fratcher) § 54.1; 79 Am.Jur.2d, Wills, § 200.
The year following the Supreme Court's decision in Nash v.Danbury National Bank, supra, Connecticut enacted the Uniform Testamentary Additions to Trusts Act. See General Statutes §45a-260(a).[11]
Neither that statute nor Connecticut case law is directly on point with the issue in this case. The issue here does not implicate the disposition of property but the measure of the fiduciary's fee. Nonetheless, not only the case law but also the statute are relevant by analogy. Our courts "`have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the CT Page 2175 statutory and common law subject matters.' Fahy v. Fahy,227 Conn. 505, 514, 630 A.2d 1328 (1993); accord New England Savings Bank v.Lopez, 227 Conn. 270, 281, 630 A.2d 1010 (1993); Canton MotorcarWorks, Inc. v. DiMartino, 6 Conn. App. 447, 453, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986). We consider this adjudicative technique to be appropriate in this case." Statev. Kulmac, 230 Conn. 43, 53, 644 A.2d 887 (1994). However, both the statute and the case law require that the document or entity sought to be incorporated by reference be actually in existence during the testator's or settlor's life or be established by him at his death.
Here, the Union Trust Company Fee Schedule was not established by the testator during his lifetime or by him at his death. That document expresses the intent of the Union Trust Company and expresses it subsequent to the testator's death.[12] It cannot possibly carry out his intentions. For this reason the court holds that the Union Trust Company fee schedule may not be incorporated by reference into the testator's will. "The right to dispose of one's property by will is one conferred by law. The extent of the right, and the conditions under which it may be exercised, are and can be only such as the law prescribes. An expression of will failing to comply with the prescribed conditions is a mere nullity." (Internal quotation marks omitted.)Hatheway v. Smith, supra, 79 Conn. 511.
Accordingly, the clause in the testator's codicil which calls for his executor to be compensated according to the Union Trust Company fee schedule in effect after his death is invalid. The Probate Court properly fixed the plaintiff's fee as executor according to the criteria enumerated in Hayward v. Plant, supra,98 Conn. 384-85. Although, as discussed supra, this court generally reviews the decision of the Probate Court de novo, the fixing of fees is primarily the function of the probate courts. Absent an agreement by the parties — and there is no such agreement here — the Superior Court cannot fix such fees. It can only determine whether the Probate Court abused its discretion.Matthies v. Hackett, 24 Conn. Sup. 470, 473-474, 194 A.2d 532
(1960) (Cotter, J.), cited with approval in Glemboski v. Glemboski,184 Conn. 602, 605, 440 A.2d 242 (1981). "Discretion means `a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. [In a doubtful case] CT Page 2176 . . . when examined under those rules of law by which Judges are guided to a conclusion, the judgment of the Court below will not be disturbed. If, on the contrary, [this court] is satisfied . . . that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present case as in any other.'" Hammerberg v.Leinert, 132 Conn. 596, 604-605, 46 A.2d 420 (1946). Employing this rarefied standard of review in light of the record before the court and the criteria enumerated in Hayward v. Plant, supra,98 Conn. 384-85, this court concludes that the Probate Court did not abuse its discretion in fixing the plaintiff's fee as executor at $28,000.00.
 III
The plaintiff also has appealed from the decision of the Probate court refusing to award him fees in his capacity as attorney for the estate. Rule 1.5 of the Rules of Professional Conduct lists the factors to be considered in determining the reasonableness of attorney's fees: "(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent.
In Wolfgang v. Cowell, supra, 2 Conn.L.Rptr. 730, the attorney and co-executor properly and satisfactorily carried out the administration of the estate, but he failed to separate his two roles in his time records. The court, therefore, was unable to determine which component of the fee was the percentage-based rate for his role as an executor and which component was the hourly rate for his role as an attorney. The court found the requested combined fees excessive.
A similar malady afflicts the plaintiff's case here. He has not presented the court with any time records of services performed in his capacity as an attorney. He contends that he did indeed serve as an attorney, his juris number was used, and he CT Page 2177 incurred specific liability as a tax return preparer, in preparing the usual probate documents, and in negotiating with the Internal Revenue Service regarding the valuation of the testator's home. It is true that "`[c]ourts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described.' Appliances, Inc. v. Yost, 186 Conn. 673, 680,443 A.2d 486 (1982)." Miller v. Kirshner, 225 Conn. 185, 201,621 A.2d 1326 (1993). However, because of the difficulty in segregating that aspect of the plaintiff's work as executor from that aspect of his work as an attorney, in the absence of any time records, this court concludes that the Probate Court did not abuse its discretion in not awarding the plaintiff attorney's fees. See generally, Matthies v. Hackett, supra, 24 Conn. Sup. 473-474.
Judgment may enter awarding the plaintiff $28,000.00 compensation for his services as executor. No attorney's fees are awarded.